### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **GENESIS GSA STRATEGIC ONE, LLC**<br><br>        Plaintiff,<br><br><br>   v.<br><br><br>**HOWARD COUNTY GOVERNMENT; HOWARD COUNTY DEPARTMENT OF INSPECTIONS, LICENSES AND PERMITS; HOWARD COUNTY EXECUTIVE CALVIN B. BALL III in his official capacity; COUNCILMEMBERS OPEL JONES, CHRISTIANA RIGBY, DEB JUNG, LIZ WALSH and DAVID YUNGMANN, in their official capacities as Members of the Howard County Council; and ROBERT J. FRANCES, in his official capacity as Director of the Howard County Department of Inspections, Licenses and Permits.**<br><br><br>        Defendants. | Civil Action No. 1:26-cv-915<br><br><br>**COMPLAINT** |

Plaintiff, Genesis GSA Strategic One, LLC ("Genesis"), by and through its undersigned counsel, brings this Complaint against Defendants Howard County Government ("Howard County"); Howard County Department of Inspections, Licenses and Permits; County Executive Calvin B. Ball III, in his official capacity as Howard County Executive; County Council Members Opel Jones, Deb Jung, Christiana Rigby, Liz Walsh and David Yungmann, in their official capacities and as members of the Howard County Council; and Robert J. Frances, Director of the Howard County Department of Inspections, Licenses and Permits (collectively, "Defendants").

## INTRODUCTION

1.      This action is brought to remedy gross violations of the Supremacy and Contract Clauses of the United States Constitution, multiple provisions of Titles 6, 8, and 28 authorizing the Departments of Homeland Security ("DHS") and Justice to carry out important assignments from Congress, and 42 U.S.C. § 1983.

2.      Genesis is a family-owned real estate developer with decades of experience building offices and facilities for the federal Government, at its request, for its use, and to its specifications.  Genesis and its affiliates have performed this function for the federal Government across the country on multiple different projects.

3.      During the administration of President Joseph R. Biden, the federal Government decided that it wanted to procure use of an office complex in Maryland for DHS.  The Biden Administration asked private developers to submit proposals for obtaining and building such a facility and then leasing it back to the federal Government through the General Services Administration ("GSA").  Pursuant to that request and at the instruction of the federal Government, Genesis purchased a commercial office building in Elkridge, Maryland to renovate and then lease back to the federal Government through GSA.  GSA signed an iron-clad lease promising to pay rent for the redeveloped building before Genesis purchased it and began its renovation work.  GSA

2

leased the building for the ultimate use of DHS and its Immigration and Customs Enforcement ("ICE") branch.

4.      DHS and its sub-agency intended to use the building primarily for office space but also made provision for a small portion of the building to be used for temporary holding of those detained by ICE, for when detainees are being processed by Government employees at the building. This small facility was for temporary, hours-long holding.  Overnight detainees would need to be transferred to other facilities, such as county jails with contracts with DHS.

5.      To outfit the property for the federal Government, Genesis secured from Howard County all necessary permits for renovations, including a pair of renovation-construction permits expressly authorizing the construction/renovation of office space and detainee processing facilities, including a temporary detention facility, a detainee processing area, and a secured waiting area (the "Permits").

6.      After issuing the Permits and approving more than 90% of the construction concluded thereunder, Defendants abruptly revoked the Permits on February 2, 2026.  Defendants stated, falsely, that the reason for the revocation was that they had just learned for the first time that ICE would occupy the building.

7.      Howard County claims that the Permits were revoked because ICE's use of the Elkridge property brings the facility within the definition of an "immigration detention facility" as defined in the Maryland Correctional Services Code §§ 1-101 and 1-102.

8.      That justification is false.  Maryland Correctional Services Code §§ 1-101 and 1-102 apply only to privately *operated* immigration detention facilities, not to facilities operated by the Federal Government or its contractors, whether or not that federal Government operated facility is owned by the federal Government or leased from a private entity.

9.      GSA is leasing the building from Genesis *for DHS to occupy and use*, through its own government employees and contractors.  Genesis is renovating the building.  Neither Genesis nor its employees will be occupying it once finished, much less operating a detention facility in it.

10.     Howard County is aware of the inapplicability of Maryland Correctional Services Code §§1-101 and 1-102 to Genesis, the Elkridge property, and the Permits, so to ensure that Genesis's Permits would not be reissued, the Councilmember Defendants, under the leadership of County Executive Ball, purported to enact emergency legislation—County Council Bill 16-2026—on February 5, 2026.

11.     Council Bill 16-2026 purports to prohibit non-government *owned* facilities—like the Elkridge property—from being used as immigration detention centers.  The bill is expressly targeted at Genesis's facility.

12.     In doing so, the bill is illegally and unconstitutionally attempting to regulate the way the federal Government organizes its affairs, forcing it to own rather than lease the property on which certain of its activities occur.

13.     The actions of Defendants substantially interfere with and obstruct the Congressionally funded and approved enforcement of federal immigration law and ICE's authority to arrange places of detention (8 U.S.C. § 1103).

14.     In particular, Defendants' actions are preventing Genesis from delivering to the federal Government, for use by ICE, a commercial building leased from Genesis by the GSA, which contains office space and a small detainee-processing facility.  And Defendants are obstructing the federal Government from carrying out its statutorily authorized activities by way of long-standing customary method of instructing a private developer to acquire property, to

renovate or to reconstruct it, and then to lease it back to the federal Government for the Government's use.

15.     Any state or local law that interferes with or is contrary to the laws of Congress is invalid pursuant to Article VI, ¶ 2 of the United States Constitution (the "Supremacy Clause"). The immunity of the federal Government from state, local or city regulation is a fundamental principle of the Constitution.

16.     Howard County's revocation of the Permits in reliance on Maryland Correctional Services Code §§ 1-101 and 1-102, and enforcement of Council Bill 16-2026 to prevent reissuance of the Permits to Genesis, override the federal Government's decision, pursuant to discretion conferred by Congress, to lease office space and detainee processing facilities from a non-governmental entity.  They place Genesis in a position in which it cannot comply with its contractual obligations to the federal Government and comply with Maryland and Howard County law.  Defendants' actions are unconstitutional and unlawful.

17.     This Court should therefore declare that Defendants' actions of revoking the Permits, and enacting Council Bill 16-2026 to prevent their reissuance, violate the Supremacy and Contract Clauses of the United States Constitution and 42 U.S.C. § 1983, and are otherwise illegal and unconstitutional.  The Court should (1) enter a preliminary and then permanent injunction requiring Defendants Howard County Government, the Howard County Department of Inspections, Licenses and Permits, and its Director Robert J. Frances, to immediately restore or reissue the Permits and to issue all necessary future permits and certificates to finish the building for federal Government use; (2) declare Council Bill 16-2026 unconstitutional and unenforceable as applied to any non-government entity that is constructing or renovating or adjusting a building on behalf of, at the request of, for the benefit of, or for leasing by the federal Government; (3) enter

a permanent injunction against Defendants from further taking adverse action against Genesis on the basis that it is providing goods and services to any department or agency of the federal Government, including DHS and ICE; and (4) award damages to Genesis to compensate harms proximately caused by the Defendants' violations of clearly established constitutional rights.

## PARTIES

18.     Plaintiff, Genesis GSA Strategic One, LLC, is a Michigan limited liability company with its principal place of business at 8100 Macomb Street, Grosse Ile, Michigan 48138-1574. Genesis does business in the State of Maryland, including in Howard County, where it has purchased real property at the instruction of or for the purpose of leasing it back to the federal Government.

19.     Defendant Howard County Government is a governmental entity with its principal place of business at 3430 Court House Drive, Ellicott City, Maryland 21043.

20.      Howard County is a charter county with substantial home-rule authority; it operates with its own charter government, elected officials, budget, departments, and legislative authority.  It has a County Executive, County Council, and full local administrative structure.

21.     Howard County is a local governmental entity subject to suit under 42 U.S.C. § 1983.

22.     Defendant Howard County Department of Inspections, Licenses and Permits is a division of Howard County Government and its principal place of business is 3430 Court House Drive, Ellicott City, Maryland 21043.

23.     Defendant Calvin B. Ball III is the Howard County Executive, with offices at 3430 Court House Drive, Ellicott City, Maryland 21043.

24.     Defendants Opel Jones, Deb Jung, Christiana Rigby, Liz Walsh, and David Yungmann are Howard County Councilmembers (the "Councilmember Defendants") with offices at 3430 Court House Drive, Ellicott City, Maryland 21043.

25.     Defendant Robert J. Frances is the Director of the Howard County Department of Inspection, Licenses and Permits, with offices at 3430 Court House Drive, Ellicott City, Maryland 21043.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the question of whether Howard County's revocation of Genesis's construction and renovation permits, and emergency adoption of a related county law to prevent their reissuance, violate the United States Constitution or are preempted by federal law is a federal question.

27.     Venue is proper in this district under 28 U.S.C. § 1391(b) because (1) a substantial part of the events or omissions giving rise to the claim occurred in this district, (2) the property that is subject of this action is situated in this district, and (3) all Defendants are residents of Maryland and one or more of the Defendants resides in this district.

## FACTUAL BACKGROUND

28.     In 2022 during the middle of the Biden Administration, GSA published an initial request-for-lease proposal titled "U.S. Government Seeks to Lease Office and Other Related Space in Baltimore, Maryland" (the "Bid Solicitation").

29.     Through the Bid Solicitation, the United States Government sought to lease approximately 28,000 square feet of commercial office space in the Baltimore area for a 15-year term with a 5-year lease-extension option.

30.     In response to the Bid Solicitation, Genesis identified a freestanding commercial building at 6522 Meadowridge Road in Elkridge, Maryland offered for sale and that would be suitable for the requirements in the Bid Solicitation.

31.     In response to the Bid Solicitation, and the Request for Lease Proposal dated January 4, 2023, Genesis submitted a lease proposal to GSA for the Elkridge property, under which Genesis would purchase the property, renovate it to the federal Government's specifications, and then lease it to the GSA for the federal Government's use.

32.     Shortly thereafter, Genesis purchased the Elkridge property.

33.     On or about May 16, 2023, Genesis entered into lease agreement GS-03P-LMD00795 for the Premises (the "Lease").  The parties to the Lease are Genesis and the federal Government, through GSA.

34.     Upon entering into the Lease, Genesis engaged architects, engineers, and a general contractor to design plans for the renovation of the Elkridge property to fit the requirements of GSA under the Lease.  To date, in execution of its obligations under the Lease to acquire, renovate, and deliver the property for federal Government occupancy, Genesis has spent $21,665,325.91.

**Howard County Approved the Permits with Knowledge that the Elkridge Property was to be Used by ICE as Offices and a Temporary Detainee-Processing Facility.**

35.     On or about September 27, 2024, Genesis applied to the Howard County Department of Inspections, Licenses and Permits for renovation construction at the Elkridge property and duly paid all associated fees

36.     At all relevant times, it was known to Howard County that the renovated Elkridge property was going to be used by ICE personnel.

37.     For example, well before Howard County issued the Permits to Genesis, Howard County Chief of Plan Review—Donald Mock—attended zoom calls with ICE officials, Genesis

representatives, and Genesis's architects and engineers to discuss its application for the Permits, including the existence of detention area for temporarily holding detainees during intake processing. On one such call, a project manager for ICE explained the exact operations that would take place within the facility and that no detainee would be held there for more than 12 hours, *i.e.*, outside the facility's hours of operation from 6 a.m. to 6 p.m.

38.    On or about February 18, 2025, the Howard County Department of Inspections, Licenses and Permits issued permit B240004317 to Genesis for the Elkridge property, and on or about August 5, 2025, it issued Permit B24003712 to Genesis for the property. True and correct copies of Permits B24003712 and B240004317 are attached hereto as **Exhibit A** and incorporated as if fully set forth herein.

39.    The Permits describe the scope of work as "GENERAL SERVICES ADMINISTRATION/ SCOPE OF WORK INCLUDES IMPROVEMENT OF TENANT SPACES, SUPPORT AREAS, DETENTION FACILITY, DETAINEE PROCESSING AND SECURED WAITING AREA". *See* Exhibit A.

40.    At all relevant times, Howard County has known that the Elkridge property was being renovated for the purpose of being leased to the Federal Government, through GSA, for use, at least in part, as a temporary detainee processing facility.

41.    Following issuance of the Permits, Genesis's general contractor commenced construction and renovation work at the Elkridge property, which work was routinely inspected by Howard County.

42.    Howard Country officials and employees—experienced in construction work— knew Genesis was spending millions and then tens of millions of dollars renovating the property, based on the permits and permissions issued. At no time, while those officials and employees

were watching that money being spent, did they raise any concern about or objection to the nature of the property.

**Howard County Abruptly and Unlawfully Revokes the Permits.**

43.    On January 30, 2026, Howard County issued a press release titled "Howard County Executive Calvin Ball to Submit Emergency Legislation Prohibiting Permitting of Privately-Owned Detention Centers." The press release was posted at https://www.howardcountymd.gov/News013026 (last visited March 4, 2026).

44.    Concerning the Elkridge property, the January 30 press release recognizes that "The work performed under the [Permits] appears to be nearing completion. The most recent inspection was passed with conditions on December 29, 2025." *See id*.

45.    As of February 2, 2026, the renovations to the Elkridge property, being carried out under authorization of the Permits, were more than 90% complete, and the renovated Elkridge property was scheduled to be turned over to the federal Government in March 2026.

46.    In a February 2, 2026 press conference, Howard County Executive Ball told reporters and the public that "The retrofitting of a private office buildings [sic] for detention use without transparency, without input, without clear oversight, is deeply troubling."

47.    County Executive Ball failed to share in his press conference that Howard County had long known that the renovated Elkridge property was to contain temporary detention facilities and related amenities to be operated by the federal Government. He also failed to share that Howard County had been visiting and approving the construction and renovation of those facilities, including the temporary detention portion of those facilities, for nearly a year.

48.    On February 2, 2026, the Howard County Department of Inspections, Licenses and Permits, acting under color of law, issued a written notice to Genesis revoking Permit B24003712

(the "Revocation Letter"), followed by an email to Genesis revoking Permit B24004317 (the "Revocation Email"), which relied on the same revocation reasoning set forth in the Revocation Letter.  A true and correct copy of the February 2, 2026 Revocation Letter is attached hereto as **Exhibit B**, and incorporated as if fully set forth herein.

49.    The Revocation Letter and Revocation Email fail to identify a single item of purportedly incorrect, inaccurate, or incomplete information provided by Genesis in support of the Permits.  They also fail to identify a single shortcoming in Genesis's (or its general or sub contractors') performance of the renovation construction work.

50.    In the Revocation Letter and Revocation Email, Howard County, through Director Frances, falsely claims that Howard County only recently learned that the renovated Elkridge property is to be occupied ICE and that the property therefore meets the definition of an "immigration detention facility" as defined in Maryland Correctional Services Code §§ 1-101 and 1-102.

51.    Howard County further claimed that Maryland Correctional Services Code §§ 1-101 and 1-102 require Howard County to provide public notice and two public hearings before permits may be approved for an "immigration detention facility," and because public notice and hearings had not occurred, the Permits were revoked.

52.    Director Frances ratified and approved the unconstitutional revocation of Genesis's Permits, declining to reject the inapplicability of Maryland Correctional Services Code §§ 1-101 and 1-102 as a legitimate basis to revoke the Permits.

53.    Howard County's application of Maryland Correctional Services Code §§ 1-101 and 1-102 to the Permits is inapposite because public notice and hearings thereunder are required only for *privately* owned *and operated* immigration detention facilities, not for private property

that is used by the federal Government to operate a government-operated facility, which is the case for the Elkridge property (assuming the property's proposed use as a temporary detainee-processing facility even meets the definition of an "immigration detention facility" under Maryland's Correctional Services Code).

54.    Howard County is well aware of the inapplicability of Maryland Correctional Services Code §§1-101 and 1-102 to Genesis, the Elkridge property, and the Permits.

**Howard County Abruptly and Unlawfully Enacts
Council Bill 16-2026 to Prevent Reissuance of the Permits.**

55.    Acting under color of law, Howard County, under the leadership of County Executive Ball and with the unanimous consent of the Councilmember Defendants, enacted emergency legislation—Council Bill 16-2026—on February 5, 2026.

56.    The Short Title of Council Bill 16-2026 is: "Emergency Act – Amending – Howard County Building Code – I-3 Use group".

57.    The full Title of Council Bill 16-2026 is:

AN EMERGENCY ACT amending the Howard County Building Code to provide that only a government agency is eligible to make application, obtain or hold a permit for the I-3 Use group; to provide that the building official may suspend or revoke a permit other than one issued to a government agency that has not passed final inspection; generally relating to the regulation of building and construction in Howard County; and declaring this to be an emergency act.

58.    A true and correct copy of Council Bill 16-2026 is attached as **Exhibit C**, as if fully incorporated herein.

59.    The I-3 Use Group refers to a Howard County zoning category (adopted from the International Building Code) that includes detention facilities.

12

60.     Council Bill 16-2026 authorizes Howard County to suspend or revoke a construction renovation permit in the I-3 Use Group, other than one issued to a government agency as owner of the property, that has not passed final inspection.

61.     Council Bill 16-2026 makes no exception for a private entity that is building or renovating property for the federal Government to lease or use.

62.     Genesis is a non-government entity selected by the federal Government to provide goods and/or services pursuant to a contract (the Lease).

63.     The Councilmember Defendants had final authority to enact Council Bill 16-2026, and did so in direct violation of the right of the federal Government and its agencies, including DHS and ICE to contract with non-government entities for the lease of real property in support of their missions, including without limitation for the operation of a temporary processing facility for individuals detained for immigration law enforcement purposes (8 U.S.C. §§1103, 1231(g)).

64.     This action was a moving force behind Genesis's injury.

65.     Defendants' actions substantially interfere with and obstruct the Congressionally funded and approved enforcement of federal immigration law by DHS and ICE.

66.     Congress codified the federal Government's exclusive authority over certain significant aspects of immigration policy through the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1103(a)(1) (charging Secretary of Homeland Security with "the administration and enforcement of . . . all [] laws relating to the immigration and naturalization of aliens").

67.     In November 2002, Congress created the Bureau of Immigration and Customs Enforcement, housed within DHS, and tasked it with border-enforcement functions. It was later renamed U.S. Immigration and Customs Enforcement.  Therefore, "authorities described herein as having been exercised by the Attorney General and the Immigration and Naturalization Service

(INS) now reside in the Secretary of Homeland Security [] and divisions of his Department." *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

68.     With respect to detention, Congress mandated that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). And indeed, Congress established a policy against the Executive Branch purchasing property for carrying out these authorities, in favor of renting it from the private sector. The Attorney General is permitted to "expend . . . amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention" only when "United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental." *Id.* This statutory structure evidences a congressional preference for the prioritization of existing facilities or leasing of suitable alternatives.

69.     Section 1231(g)(2) makes this clear, requiring ICE to "consider the availability for purchase or lease of any existing . . . detention center, or other comparable facility suitable for such use."

70.     Under 6 U.S.C. § 112(b)(2), the Secretary of Homeland Security "shall have the authority to make contracts . . . as may be necessary and proper to carry out" her responsibilities. Following from the Secretary's power to delegate contracting functions, the "ICE Head of the Contracting Activity . . . may enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services." 48 C.F.R. § 3017.204-90.

71.     The actions of Defendants substantially interfere with and obstruct the Congressionally funded and approved enforcement of federal immigration law by DHS and ICE pursuant to the INA and its implementing regulations.

72.     Defendants' actions are preventing Genesis from delivering to the federal Government, for use by ICE, a commercial building leased from Genesis by GSA.

73.     Any state or local law that interferes with or is contrary to the laws of Congress is invalid pursuant to the "Supremacy Clause."  The immunity of the federal Government from state, local, or city regulation is a fundamental principle of the Constitution.[1]

74.     Howard County's revocation of Genesis's Permits in reliance on Maryland Correctional Services Code §§ 1-101 and 1-102, and enforcement of Council Bill 16-2026 to prevent their reissuance, would override the federal Government's decision, pursuant to discretion conferred by Congress, to lease office space and temporary detention facilities from a non-governmental entity.  They are unconstitutional and unlawful on their faces.

75.     As detailed herein, Defendants' actions were intentional and violated clearly established constitutional rights.  They have proximately and directly caused extensive damages to Genesis, including the costs of pausing the construction project, increased and daily compounding financing costs during the pause, the additional costs of restarting construction if the actions are eventually rescinded or enjoined, and (if for some reason the Defendants do not voluntarily or through judicial injunction rescind their actions and provide necessary approvals) tens of millions of dollars in property acquisition and construction costs, among other costs, and scores of millions more in lost profits from the leasing arrangement with the federal Government, among other damages.

---

[1] Private parties impacted by state or local laws that threaten to interfere with the federal Government's immunity may bring suit and obtain redress.  *See, e.g.*, *Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (*en banc*) (suit by government contractor challenging California detention law); *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025) (suit by government contractor challenging New Jersey detention law); *see also United States v. Washington*, 596 U.S. 832, 838–39 (2022) ("state laws that either regulate the United States directly or discriminate against the Federal Government or those with whom it deals (e.g., contractors)" are prohibited (cleaned up)).

## CAUSES OF ACTION

## COUNT I

**Violation of the Supremacy Clause of the United States Constitution (Direct Regulation, Discrimination, and Preemption)**

76.     Genesis repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

77.     Under the Supremacy Clause of the United States Constitution, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).  "State law may run afoul of the Supremacy Clause in two distinct ways: The law may regulate the Government directly or discriminate against it [intergovernmental immunity], or it may conflict with an affirmative command of Congress [preemption]." *North Dakota v. United States*, 495 U.S. 423, 434 (1990) (internal citations omitted).

78.     Genesis, as a contractor for the United States, enjoys and is clothed in the federal Government's intergovernmental immunity under the Supremacy Clause.

79.     By revoking the Permits and enacting CB16-2026, Defendants have substantially interfered with the operations of, and are attempting to regulate the activities of, the federal Government.

80.     Congress has not authorized Defendants to regulate the federal Government's activities with respect to facilities such as the Elkridge property, which Genesis is providing to the federal Government pursuant to the Lease.

81.     Defendants' actions substantially interfere with the GSA's ability to carry out its real property leasing operations for the federal Government.

82.     Defendants' actions substantially interfere with DHS and the Department of Justice's ability to implement the responsibilities assigned to them by Congress with respect to

enforcement of the immigration and naturalization laws of the United States, including its authorities to temporarily detain individuals in the conduct of those responsibilities.

83.    Defendants' actions discriminate against the federal Government, as evidenced by statements made prior to and following passage of Council Bill 16-2026.  The Supremacy Clause forbids States and localities from discriminating against the functions of the federal Government, as it upends the careful balance of authority between federal and State governments.

84.    For example, a memorandum affixed to Council Bill 16-2026 makes direct reference to the Elkridge property and Genesis. And contemporaneous statements from County Executive Ball and Councilmembers Jung, Jones, Walsh, and Rigby regarding Council Bill 16-2026 all mention one or both of ICE and federal immigration policy.  This shows a discriminatory intent to interfere with the execution of federal Government functions.

85.    Defendants' actions are also in conflict with federal immigration law, interfere with the purpose behind federal immigration law, and present a substantial obstacle to the purposes of Congress in enacting federal immigration law.

86.    Through their actions, Defendants have severely curtailed the federal Government's discretion to determine where to process and temporarily detain federal immigration detainees and frustrated Congress's delegation of discretion to GSA, DHS, and ICE to discharge their constitutional and statutory responsibilities. Defendants' actions obstruct the federal Government's contracting decisions by displacing the federal Government's determination of what immigration detention facilities are "appropriate."  (8 U.S.C. §§ 1103, 1231(g)(1)).

87.    Defendants' actions also conflict with and obstruct the statutory direction to DHS and the Department of Justice to proceed through leasing for obtaining facilities like the one in question.

88.     Defendants' actions are therefore unconstitutional and invalid as applied to Genesis's renovation and leasing of the Elkridge property to GSA, and by extension ICE, under principles of express, conflict, and obstacle preemption.

89.     Defendants' actions directly and proximately caused Genesis to suffer violations of constitutional rights, including but not limited to interference with its contractual and/or statutory obligations to the federal Government, delay or denial of use of the Elkridge property, and exposure to legal, financial, and operational harm.

90.     Under *Ex parte Young*, 209 U.S. 123 (1908), Genesis may sue for injunctive relief to prevent Defendants from enforcing unconstitutional laws.

## COUNT II

### Violation of the Contract Clause of the United States Constitution

91.     Genesis repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

92.     Article I, Section 10 of the United States Constitution prohibits states from passing any law "impairing the Obligation of Contracts."  U.S. Const., Art. I, Sec. 10.

93.     Defendants' revocation of the Permits and enactment of Council Bill 16-2016 operate as a substantial impairment of the contractual relationship between Genesis and the GSA, acting on behalf of the federal Government, as memorialized in the Lease.

94.     Defendants' actions undermine Genesis and the federal Government's contractual bargain, interfere with both parties' reasonable expectations, and prevent both parties from safeguarding their rights.

95.     Defendants' actions do not advance a significant and legitimate public purpose and they were not undertaken appropriately or reasonably.  In fact, as evidenced by the memorandum

affixed to Council Bill 16-2026, the bill was passed to expressly target Genesis, the Elkridge property, and the contractual bargain between Genesis and the federal Government to use the Elkridge property for federal immigration purposes.

96.     Defendants' actions therefore constitute a substantial and unconstitutional impairment of Genesis's contractual relationship with the federal Government. As a result, Genesis has suffered, and will continue to suffer, significant injury in the form of delay or denial of use of the Elkridge property and exposure to legal, financial, and operational harm.

97.     Under *Ex parte Young*, Genesis may sue for injunctive relief to prevent Defendants from enforcing unconstitutional laws.

## COUNT III

### Violation of 42 U.S.C. § 1983

98.     Genesis repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

99.     Under 42 U.S.C. § 1983, every person who "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

100.     Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

101.     The revocation of the Permits and enactment of Council Bill 16-2016 were taken under color of state and/or county law and pursuant to official Howard County policy or custom in the exercise of Howard County's policymaking authority.

102.    Defendants' actions, which violate the Supremacy Clause and Contract Clause and multiple provisions of Titles 6 and 8 of the United States Code, deprived (and continue to deprive) Genesis of rights, privileges, and/or immunities secured by the Constitution and laws of the United States.

103.    None of the Defendants can invoke immunity. Section 1983 does not confer entity immunity on county governments, *see Jeffries v. Maryland Dep't of Hous. & Comm. Dev.*, No. 8:22-cv-00526, 2023 WL 6976066, at *5 (D. Md. Oct. 23, 2023), and qualified immunity is inapplicable to the individual Defendants here because at the time the Permits were revoked and Council Bill 16-2016 was enacted, it was well established that state and local efforts to interfere with DHS and ICE detention facility practices through the targeting of private contractors are unconstitutional. *See Geo Grp., Inc.*, 50 F.4th 745; *CoreCivic, Inc.*, 145 F.4th 315.

104.    Councilmember Christiana Rigby acknowledged as much: "Multiple communities and states that have tried to ban private detention centers because of the lack of oversight, their history of abuse, the unethical standard regarding detention.  Most of those avenues ***have not prevailed against the federal government***."

105.    As a result of Defendants' conduct, Genesis is entitled to compensatory damages and attorneys' fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, in addition to all other just and proper relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Genesis GSA Strategic One, LLC respectfully requests that this Court:

a.    Declare that Howard County Government's enactment and enforcement of Council Bill 16-2026, and its revocation of Genesis's Permits, violate the Supremacy Clause of the United

States Constitution, as well as federal statutes governing immigration detention and removal, and are preempted and unenforceable as applied to Genesis's federally-contracted operations;

      b.      Enjoin Howard County Government from enforcing Council Bill 16-2026, or any related current or future legislative or administrative action, to the extent such enforcement impairs, restricts, or interferes with Genesis's rights and obligations under its federal lease and contracts, or otherwise conflicts with federal law or the United States Constitution;

      c.      Direct Howard County Government to reinstate or reissue the Permits and any other permits, authorizations, and approvals necessary for Genesis to perform its obligations under its lease with the United States of America, acting through the GSA, for the premises at 6522 Meadowridge Road, Elkridge, Maryland;

      d.      Award Genesis compensatory damages and any other relief to which it may be entitled under 42 U.S.C. § 1983;

      e.      Award Genesis its costs, attorneys' fees, and any other relief to which it may be entitled under 42 U.S.C. § 1988 or as justice requires; and

      f.      Grant such other and further relief as the Court deems just and proper.

Dated: March 4, 2026

By:    /s/Michael J. Edney
       Torsten M. Kracht
       Bar No. 16944
       Michael J. Edney
       Bar No. 20646
       **HUNTON ANDREWS KURTH LLP**
       2200 Pennsylvania Avenue NW
       Washington, DC 20037
       Tel. 202.778.2204
       Fax. 202.778.2201
       medney@hunton.com
       tkracht@hunton.com

       *Counsel for Plaintiff,*
       *Genesis GSA Strategic One, LLC*

099900.0012387 DMS 354767223v8