GENESIS GSA STRATEGIC ONE, LLC,

    **Plaintiff,**

    v.

    Case No. 1:26-cv-0915-ABA

HOWARD COUNTY GOVERNMENT, *et al.*,

    **Defendants.**

## STATEMENT OF INTEREST BY THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. §§ 517 and 518 to address an admitted and legally unjustified effort by Howard County to interfere with federal immigration enforcement.[1] The United States has a substantial interest in countering state and local efforts to interfere with or disrupt federal operations and contracts, in the proper application of the Constitution and its Supremacy Clause, and in the foundational principles that protect the Federal Government from unlawful state and local interference—whether direct or indirect. Each of these interests is implicated here.

---

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C.§ 517; *see id.* § 518 ("When the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so."). These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party. *See, e.g.*, *Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000), and are not intended to "subject[ ] it to the general jurisdiction" of a court, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252–53 & n.5 (D.C. Cir. 2002).

## **INTRODUCTION**

The Constitution and the Immigration and Nationality Act (INA) vest in the Federal Government the exclusive authority to regulate immigration and determine which noncitizens will be permitted to reside in the United States and which will be removed from the country. In support of that authority, Congress has vested in the Executive Branch broad discretion over the housing of immigration detainees. Howard County Council Bill 16-2026 impermissibly intrudes on that discretion and should not stand.

It is uncontroverted that Howard County could not preclude the United States from operating a detention facility within the County. It also is uncontested that Howard County sought to achieve essentially the same result in Council Bill 16-2026, which prohibits the United States from engaging a federal contractor to "make application [for]," "obtain," or "hold" a permit for a property on which a detention facility is located *even when* the United States itself will end up operating the facility. Compl. Exh. C, Dkt. 1-3. On its face, this would preclude the Federal Government from operating a detention facility on land owned by a nongovernmental entity—*i.e.*, from leasing privately owned property for federal detention operations. Council Bill 16-2026 thus would force the Department of Homeland Security (DHS) to abandon the means by which it is preparing to house aliens temporarily awaiting immigration proceedings in the greater Baltimore area. It also would force the General Services Administration (GSA) to halt a years-old, multimillion dollar contract in place and very near completion to implement those means.

Fundamental principles of intergovernmental immunity—including its bars on state or local (1) regulation of the Federal Government, and (2) discrimination against the Federal Government—preclude that result.[2] So does (3) preemption. Moreover, (4) the public interest weighs in favor of an injunction preventing that result. The revocation of Plaintiff's permits—

---

[2] Indeed, Defendants' Motion to Dismiss and Opposition include *no* mention of intergovernmental immunity. *Compare* Dkts. 18-1 at 7–10; 19 at 3–6 (both addressing only "preemption" as to Count I of the Complaint), *with* Compl. ¶¶ 76–90; Dkt. 16 at 14–18 (Plaintiff's intergovernmental immunity claim and arguments as to Count I).

whether pursuant to Council Bill 16-2026, to interfere with federal operations, or based on pretext—suffers from these same intergovernmental-immunity and preemption infirmities.

## <u>BACKGROUND</u>

Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations currently occupies space in the Fallon Federal Building in Baltimore, Maryland, which is inadequate for mission-critical operations due to security deficiencies, logistical challenges, and space limitations. In 2022, the GSA issued a request for lease of approximately 28,000 square feet of office and related space in Baltimore for a 15-year term. Genesis Baltimore, LLC (Genesis) purchased the property at 6522 Meadowridge Road, Elkridge, Maryland, and on or around May 16, 2023, entered into a lease agreement with GSA for approximately 28,000 square feet. The new facility was designed to address operational needs by including administrative space, processing areas for intake and release, holding cells for temporary detention, a sallyport, and a Sensitive Compartmented Information Facility, among other features. The estimated project cost is $14,000,000.

The permitting process began on January 31, 2025, when the GSA issued a Construction Notice to Proceed for the Elkridge facility. On August 6, 2025, Howard County granted a construction permit, allowing Genesis to commence renovations and build-out of the property in accordance with federal requirements. The permit required the Elkridge facility to be classified as Institutional Group I-3, a designation for institutional uses such as detention centers and holding cells. Construction progressed smoothly, and by early February 2026, approximately 90 percent of the project was complete.

However, on February 2, 2026, Howard County abruptly revoked the previously issued permit, halting ongoing work. Two days later, on February 4, 2026, the County issued a formal stop work order, further suspending all construction activities at the site. The following day, Howard County enacted Council Bill 16-2026, which amended the County Building Code to restrict Group I-3 permit eligibility (be it for seeking, obtaining, or holding a permit) to government agencies only. *See* Dkt. 1-3.

**STATEMENT**

**1. Intergovernmental Immunity (Regulation).** The Supreme Court and courts of appeals have repeatedly made clear that an unconstitutional intrusion into the operations of the Federal Government is not saved by casting legislation as a restriction or requirement on persons who do business with the United States, rather than on the Government itself. Thus, for example, even a state requirement of general applicability, such as a contractor licensing requirement, cannot be applied when the contractor does business with a federal agency. *See Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (per curiam). The local law here extends even further than such impermissible licensing requirements. Council Bill 16-2026 does not merely restrict the Federal Government's choice of contractor: it eliminates that choice altogether. As both the Third Circuit and the en banc Ninth Circuit have recognized in rejecting similar state laws, the Supremacy Clause prohibits such attempts to control how the Federal Government carries out its operations. *See CoreCivic, Inc. v. Gov. of New Jersey*, 145 F.4th 315 (3d Cir. 2025); *GEO Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc).

Howard County's own statements surrounding Council Bill 16-2026 and this litigation confirm this intergovernmental-immunity infirmity. For example, the memorandum accompanying the Bill states that "this emergency legislation would restrict the use of privately-owned detention facilities in Howard County." Dkt. 1-3 at 5; *id.* at 2 ("to provide that only a government agency is eligible to make application, obtain or hold a permit for the I-3 Use group" and "that the building official may suspend or revoke a permit other than one issued to a government agency . . ."). Even now, Defendants say the Bill "precludes purely private actors, those 'other than a government agency,' being permitted to construct an I-3 Use." Dkt. 18-1 at 8. That is exactly what Plaintiff (an entity "other than a government agency," in the parlance of

4

Council Bill 16-2026, Dkt. 1-3) has been and wishes to continue doing.[3] Defendants further confirm their aim to gatekeep federal arrangements and operations by saying "the ordinance does not apply *when federal authority is being properly exercised*." Dkt. 19 at 4 (emphasis added). That simply is not Howard County's call to make. And again, Defendants do not resist these straightforward conclusions, addressing intergovernmental immunity nowhere in their Motion to Dismiss or Opposition. *See supra* Note 2.

     **2. Intergovernmental Immunity (Discrimination).** Council Bill 16-2026 would be unconstitutional even if Howard County did not intend to single out the United States—but it did. In enacting Council Bill 16-2026, the County and its officials took direct aim at functions of the Federal Government, in particular federal immigration enforcement, as demonstrated by the Bill's supporting memorandum, timing, and gerrymandered nature, as well as explicit contemporaneous public statements. *See, e.g.*, Dkt. 1-3 at 5; Dkt. 16-1 at 22–25; *Howard County Executive Calvin Ball to Submit Emergency Legislation Prohibiting Permitting of Privately-Owned Detention Centers*, Howard County Maryland (Jan. 30, 2026), https://www.howardcountymd.gov/News013026. Neither the Defendants' Motion to Dismiss nor Opposition responds to this argument. *See supra* Note 2. At bottom, Council Bill 16-2026 barred "purely private actors, those 'other than a government agency,' being permitted to construct an I-3 Use," Dkt. 18-1 at 8, and authorized applying that new bar to anyone who "has been issued a permit but which has not passed final inspection as of the effective date of this legislation," when the *only* known such actor and permit are Genesis and the Elkridge facility. That discrimination cannot stand. *See United States v. Washington*, 596 U.S. 832, 838–39 (2022).

---

[3] A couple pages later, Defendants attempt to invoke other provisions of the Howard County Building Code to argue that Council Bill 16-2026 "does not preclude I-3 Use Group permits for structures leased by a government from a private property owner." *See* Dkt. 18-1 at 10. But they fail to explain how Genesis (or any private, federal contractor) could qualify as "a government agency," which is the only type of entity "eligible to make application, obtain, or hold a permit for I-3 Use Group." Dkt. 1-3 at 3.

**3. Preemption.** For many of the same reasons that Council Bill 16-2026 contravenes intergovernmental immunity, it also poses a major "obstacle" to the implementation of the immigration laws and federal leasing authorities and thus runs afoul of preemption principles. *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016). Courts have repeatedly recognized that the grant of discretion by Congress impliedly preempts state and local law that would interfere with the exercise of that discretion. *See, e.g.*, *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373–77 (2000); *Arizona v. United States*, 567 U.S. 387, 409 (2012); *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154–56 (1982); *GEO Grp.*, 50 F.4th at 762.

Congress gave the Department of Homeland Security (DHS) broad authority and discretion in arranging appropriate places of detention for aliens detained pending removal or a decision on removal, specifically including its use of privately owned facilities. *See* 8 U.S.C. § 1231(g); 48 C.F.R. § 3017.204.90.[4] And it gave GSA broad authority in leasing facilities "for the accommodation of a federal agency in a building (or improvement)," 40 U.S.C. § 585(a)(1). In exercising its authority, DHS generally does not own its detention facilities in order to maintain flexibility and best facilitate housing and removal of removable aliens. The (intended) impact of Council Bill 16-2026 will be to foreclose a choice approved by Congress and require the Federal Government either (i) to own the facility and seek all necessary permits directly or (ii) to forego detaining aliens in Howard County and use only less suitable facilities in other Maryland counties or states, such as the Fallon Federal Building. The Bill thus presents a significant obstacle to both DHS's ability to exercise its congressionally authorized discretion in arranging immigration detention and GSA's ability to contract with private entities for the accommodation of that work.

Council Bill 16-2026 also interferes with the INA's authorities and directives regarding detaining aliens pending removal or a decision on removal. *See, e.g.*, 8 U.S.C. §§ 1225, 1226,

---

[4] Indeed, this authority establishes a field (detention of immigration detainees) that federal law *exclusively* occupies. *See GEO Grp.*, 50 F.4th at 761–62; *see also* 6 U.S.C. §§ 202(3), 251(2), 551(d)(2) (DHS authority to carry out immigration enforcement); One Big Beautiful Bill Act, Pub. L. No. 119-21, § 90003, 139 Stat. 358 (2025) (providing "$45,000,000,000, for single adult alien detention capacity and family residential center capacity").

1231. If every county, city, and state may preclude the Federal Government from detaining aliens in privately-owned facilities and especially, as here, in government-run facilities, the Government could not effectively execute "the full purposes and objectives of Congress." *Hughes*, 578 U.S. at 163. More broadly, immigration is not the only exclusively federal prerogative at issue. As the Supreme Court has recognized, interference with immigration enforcement can implicate substantial national security and foreign affairs concerns—obligations that the Executive Branch has been exclusively entrusted to discharge on behalf of the Nation. *See Trump v. Hawaii*, 585 U.S. 667, 703–04 (2018).

Whether, when, where, and how to contract for detention facilities in fulfilling its immigration responsibilities are matters committed to the Federal Government, which is answerable to the citizens of all states for its conduct, not to the Howard County Council or the legislature of any individual state or locality.[5]

**4. Public Interest.** In addition to preventing the constitutional violations discussed above (itself a public-interest justification for entering an injunction), permitting the few steps remaining to finish and open the Elkridge facility would serve the public interest. The current Fallon Federal Building space is insufficient for ICE's operational needs, presenting logistical and security

---

[5] Defendants' invocation of Maryland Correctional Services Code § 1-102 does not move the needle for several reasons. To begin, the statute does not clearly apply to federally operated facilities, like the Elkridge facility will be. Md. Correctional Servs. Code § 1-102(b) ("a unit of local government . . . may not approve a zoning variance or issue a permit for the construction of a building or the reuse of existing buildings or structures *by any private entity for use as an immigration detention facility* unless" certain procedures are followed (emphasis added)). And even if it could be read to apply to this situation, such an application would be plainly unconstitutional: it would regulate the Federal Government's operations, facially and effectively discriminate against the Federal Government, *see id.* (limiting application to "immigration detention facility[ies]"), and present an obstacle to the federal authorities and aims already discussed. It also appears that this eleventh-hour invocation may be pretextual—the County is not seeking more process *before* authorizing the Elkridge facility; it is trying to prevent it from *ever* opening. *See* Dkt. 16-1 at 22–25.

In the end, the Court should not permit one unconstitutional action to go unchecked simply because the actor belatedly squints and strains to invoke an unconstitutional application of another law as a purported shield. Creating that constitutional issue with a state statute can be avoided simply by construing it not to apply here.

challenges that directly impact personnel, detainees, and sensitive operations. *See* Mem. Op., *D.N.N. v. Liggins*, No. 1:25-cv-01613-JRR (D. Md. Mar. 6, 2026) (discussing detention conditions at the facility). Security deficiencies increase vulnerability and the risk of operational disruptions, while inadequate space restricts detainee processing, intelligence operations, and law enforcement coordination. The downtown Baltimore location further impedes response times and field operations. Moreover, delays in relocating to the Elkridge facility threaten mission-critical functions, risk cost overruns, and create legal uncertainty. Continued reliance on the current facility limits ICE's intelligence capacity and ability to identify and act on public safety threats, while also exposing the agency to compliance risks and additional costs if alternative solutions are required.

## CONCLUSION

Howard County's actions override federal decisions to lease office space and detainee processing facilities from nongovernmental entities—impermissibly regulating federal operations and contractors in direct contravention of Supreme Court, discriminating against federal contractors and operations, and interfering with federal statutory and regulatory mandates. They should not be allowed to stand.

Dated: April 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

*/s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
 (PA Bar No. 326539)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-1141
Charles.Roberts2@usdoj.gov

*Attorneys for the United States*