**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Baltimore Division)

|  |  |
|---|---|
| **GENESIS GSA STRATEGIC ONE, LLC**<br><br>Plaintiff,<br><br>v.<br><br>**HOWARD COUNTY; HOWARD COUNTY DEPARTMENT OF INSPECTIONS, LICENSES AND PERMITS; HOWARD COUNTY EXECUTIVE CALVIN B. BALL III in his official capacity; COUNCILMEMBERS OPEL JONES, CHRISTIANA RIGBY, DEB JUNG, LIZ WALSH and DAVID YUNGMANN, in their official capacities as Members of the Howard County Council; and ROBERT J. FRANCE, in his official capacity as Director of the Howard County Department of Inspections, Licenses, and Permits.**<br><br>Defendants. | Case No. 1:26-cv-00915-ABA |

**PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS SUPPLEMENT TO ITS MOTION FOR A PRELIMINARY INJUNCTION AND RESPONSE TO DEFENDANTS' <u>MOTION TO DISMISS.</u>**

**TABLE OF CONTENTS**

**Page**

I.      Legal Standard ................................................................................................ 4

II.     The Constitutionality Of Section 1-102(B) As Applied To The Elkridge Project Is Ripe For Review. ................................................................................ 4

III.    Genesis Is Entitled To A Preliminary Injunction. ........................................... 6

        A.      Genesis is Likely to Succeed on the Merits of its Constitutional Claims (and States Claims for Relief) because Howard County's Effort to Enforce Section 102(b) of the Maryland Corrections Article is Unlawful and Unconstitutional. ................................................................. 6

                1.      Genesis is properly challenging the validity of Section 1-102(b) as applied by the County. .............................................. 6

                2.      Applying Section 1-102(b) to revoke Genesis's permits directly regulates the federal Government. ................................ 8

                3.      Applying Section 1-102(b) to revoke Genesis's permits discriminates against the federal Government. ....................... 13

                4.      Applying Section 1-102(b) to revoke Genesis's permits is preempted. ............................................................................... 16

                5.      Granting Genesis relief does not violate the Anti-Commandeering Doctrine. ...................................................... 21

                6.      The action of Howard County officials, including revoking Genesis's permits under Section 1-102(b) violated the Contract Clause. ................................................................................... 22

        B.      Genesis continues to suffer irreparable harm and the public interest favors an injunction. ................................................................. 23

IV.     Genesis Properly States A Claim Under Section 1983. ................................. 25

V.      Conclusion ..................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012)......................................................................................17

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)......................................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................4

*Baltimore Tchrs. Union, Am. Fed'n of Tchrs. Loc. 340, AFL-CIO*,
6 F.3d 1012, 1015 (4th Cir. 1993).................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................4

*Boeing Co. v. Movassaghi*,
768 F.3d 832 (9th Cir. 2014) ........................................................................13

*Bucklew v. Precythe*,
587 U.S. 119 (2019)........................................................................................7

*CareFirst, Inc. v. Taylor*,
235 F. Supp. 3d 724 (D. Md. 2017)...............................................................25

*Centro Tepeyac v. Montgomery Cnty.*,
722 F.3d 184 (4th Cir. 2013) ........................................................................25

*Chandler v. James*,
985 F.Supp. 1094 (M.D. Al. 1997)................................................................23

*CoreCivic, Inc. v. Governor of New Jersey*,
145 F.4th 315 (3d Cir. 2025) ...............................................................8, 13, 18

*Cox v. United States*,
No. 1:12CR245-1, 2015 WL 1040577 (M.D.N.C. Mar. 10, 2015)...................23

*Crosby v. City of Gastonia*,
   635 F.3d 634 ................................................................................27

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)......................................................................16

*D.N.N. v. Liggins*,
   No. 1:25-cv-01613-JRR (D. Md. Mar. 6, 2026)...............................25

*Dennis v. Higgins*,
   498 U.S. 439 (1991)......................................................................28

*Duvall v. Hogan*,
   No. CV ELH-94-2541, 2020 WL 3402301 (D. Md. June 19, 2020) .................16

*Esso Standard Oil Co. v. Evans*,
   345 U.S. 495 (1953)......................................................................11

*Gallo v. D.C.*,
   No. 23-7158, 2025 WL 1446283 (D.C. Cir. May 20, 2025), *cert. denied*, 146 S. Ct. 302 (2025) ...............................................................27

*Geo Grp., Inc. v. Inslee*,
   151 F.4th 1107 (9th Cir. 2025) .................................................18, 19

*Geo Grp., Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022) ..........................................................8

*Goodyear Atomic Corp. v. Miller*,
   486 U.S. 174 (1988).......................................................................9

*Graves v. New York ex rel. O'Keefe*,
   306 U.S. 466 (1939)........................................................................8

*Hancock v. Train*,
   426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) .......................10

*Harbor Side Grill, LLC v. City of Annapolis*,
   2026 WL 636867 (D. Md. Mar. 6, 2026) .........................................24

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952)......................................................................18

*Hencely v. Fluor Corp.*,
  146 S. Ct. 1086 (2026)................................................................................17

*Hines v. Davidowitz*,
  312 U.S. 52 (1941).....................................................................................17

*HMO of N.J., Inc. v. Whitman*,
  72 F.3d 1123 (3d Cir. 1995) ........................................................................9

*Hunter v. Town of Mocksville, N.C.*,
  897 F.3d 538 (4th Cir. 2018) .....................................................................26

*Immigrant Legal Res. Ctr. v. City of McFarland*,
  478 F. Supp. 3d 988 (E.D. Cal. 2020) .......................................................14

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) ..................................................................24, 25

*Leslie Miller, Inc. v. State of Ark.*,
  352 U.S. 187 (1956)........................................................................ 9-11, 18

*Maryland Pest Control Ass'n v. Montgomery Cnty., Md.*,
  884 F.2d 160 (4th Cir. 1989) .....................................................................26

*McHenry Cnty. v. Kwame Raoul*,
  44 F.4th 581 (7th Cir. 2022) .........................................................12, 15, 21

*Mitchell v. Clark*,
  110 U.S. 633, 4 S. Ct. 170, 28 L. Ed. 279 (1884)......................................27

*Mitchum v. Foster*,
  407 U.S. 225 (1972)...................................................................................27

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018)...................................................................................21

*New York, United States v. Illinois*,
  796 F. Supp. 3d 494 (N.D. Ill. 2025).........................................................15

*Nwauzor v. GEO Grp, Inc.*,
  127 F.4th 750 (9th Cir. 2025) ....................................................................11

*Preston v. Leake*,
  660 F.3d 726 (4th Cir. 2011) ........................................................................5

*Pub. Utilities Comm'n of State of California v. United States*,
  355 U.S. 534 (1958)................................................................................10, 11

*S. California Gas Co. v. City of Santa Ana*,
  336 F.3d 885 (9th Cir. 2003) .....................................................................28

*Sailors v. Bd. of Ed. of Kent Cnty.*,
  387 U.S. 105 (1967)....................................................................................22

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) .....................................................................10

*United States v. Fresno Cnty.*,
  429 U.S. 452 (1977).....................................................................................18

*United States v. King Cnty.*,
  122 F.4th 740 (9th Cir. 2024) ....................................................................13

*United States v. Lane*,
  689 F. Supp. 3d 232 (E.D. Va. 2023) ..........................................................7

*United States v. New York*,
  810 F. Supp. 3d at 353 ...............................................................................12

*United States v. Town of Windsor, Conn.*,
  765 F.2d 16 (2d Cir. 1985) .........................................................................12

*United States v. Washington*,
  596 U.S. 832 (2022)...........................................................................9, 13, 14

*Vill. of Euclid, Ohio v. Ambler Realty Co.*,
  272 U.S. 365 (1926)....................................................................................23

*Washington v. United States*,
  460 U.S. 536 (1983)....................................................................................13

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
  252 F.3d 316 (4th Cir. 2001) .....................................................................26

*West v. Atkins*,
    487 U.S. 42 (1988)........................................................................25

*Whitaker v. Monroe Staffing Servs., LLC*,
    42 F.4th 200 (4th Cir. 2022) ...........................................................4

*Willowbrook Apartment Assocs., LLC v. Mayor & City Council of
    Baltimore*,
    563 F. Supp. 3d 428 (D. Md. 2021)....................................................22

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................23

**Statutes**

6 U.S.C. § 112(b)(2)........................................................................17

8 U.S.C. 1231(g) ..........................................................................18

8 U.S.C. §§ 1222, 1225, 1226, 1226a, 1231 .........................................17

8 U.S.C. § 1231(g)(1)...................................................................17, 20

8 U.S.C. §§1103(a)(11)....................................................................17

18 U.S.C. § 4013 ...........................................................................17

28 U.S.C. § 530C(a)(4) ..................................................................17

40 U.S.C. § 3312 ...........................................................................19

42 U.S.C. § 1983 ...........................................................................26

Howard County Building Code § 105.6 ..............................................1

International Building Code (2021), § 308.4 ........................................1

Maryland Correctional Services Code §1-102....................................*passim*

U.S. Const., Art. I, Sec. 10.............................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 5.1 ...................................................7

Federal Rule of Civil Procedure 12(b)(6) ...................................................................4

Genesis continues to suffer irreparable harm from the County's unlawful revocation of Genesis's building permits pursuant to Section 1-102(b).  Interest charges are mounting; the cost of maintaining a team to perform obligations to the federal Government rise.  And these significant economic costs are irreparable when they are being caused by the constitutional violations of a governmental entity.

Nothing in either the County or the State of Maryland ("the State") briefing justifies this.  The Court should confidently and immediately grant Genesis's Motion for a Preliminary Injunction and deny the County's Motion to Dismiss.

Between the State and County filings in this case, we have an episode of "Who's on First" of which Abbott and Costello would be proud.  The County passed an ordinance purporting to ban the Elkridge facility and to require the revocation of its permits.  See ECF 16..  Then the County's briefing said it was not really the County ordinance that required the revocation of the permits, but instead a statute—Section 1-102(b) of the Maryland Corrections Code.  *See* ECF 19 at 3-6..  Then, at oral argument, the County's attorney could not make a firm representation that the County ordinance did not apply to the Elkridge office building.  ECF 39 (Tr. 60: 12-16).  Then, in a subsequent letter, the County finally confirmed that it did not.  ECF 36.  Then the State arrives: The State says its law could not possibly be the cause of the County's permit revocation, it is  a provision of the Howard County Building Code.  State Br. at 13.  But, because of Section 1-202(b) of the Maryland Corrections Code, the permit was invalidly issued and is of no force and effect.  State Br. at 15.

Enough already.  The County targeted the Elkridge facility for permit revocation because it was going to be leased to the federal Government, and federal Government employees are going to use a small portion of that office building for temporary immigration detention.  That revocation

1

decision violates the Supremacy Clause.  Section 1-102(b) does not justify the revocation decision, because as applied to the Elkridge property, it would be unconstitutional.  This Court should forthwith preliminarily enjoin the County from further interference with the facility, including through the revocation or non-issuance of permits for it because the federal Government will be enforcing federal immigration law there.

The State's argument that the constitutional challenge to any application of Section 1-102(b) to Elkridge project is not ripe is nonsensical.  The County revoked Genesis's permits expressly because it believed that the Elkridge project was required to undergo Section 1-102(b)'s potentially indefinite notice and comment procedures.  Moreover, the State agrees with the County that Section 1-102(b) applies to the Elkridge project and suggests that if Genesis were to continue construction on the project that it could be sued for non-compliance.  It is hard to see how there could be a more immediate controversy over the application and constitutionality of Section 1-102(b).  The fact that the State believes that Section 1-102(b) did not support revoking Genesis's permits is only further evidence that the County acted unlawfully, it does not make the dispute unripe.

On the merits Genesis maintains that it is entitled to a preliminary injunction and is likely to succeed on the merits of its constitutional claims.  Primarily, the County's actions in improperly revoking Genesis's permits based on Section 1-102(b) violate the Supremacy Clause in three distinct ways: (1) they improperly directly regulate and control the federal Government's ability to carry out immigration enforcement, (2) they discriminate against the federal Government by requiring immigration facilities to go through more arduous processes than other facilities that are solely devoted to detention for far longer periods of time, and (3) they are  preempted because these serve as an obstacle to Congress's objectives that the Department of Homeland Security be

2

able to lease facilities and determine where, when, and how, to process in temporary detention those suspected of immigration violations.

The responses from the State and the County do not rebut a single one of these Supremacy Clause issues, let alone all three of them. They instead attempt to analogize Section 1-102(b) to neutral laws that *indirectly* burden the federal Government. But the County's and State's reading of Section 1-102(b) is neither neutral nor indirect. It is not neutral because it singles out "immigration detention," an exclusively federal function, and thus discriminates against the federal Government. And it is not indirect because it subjects a building the federal Government intends to use for immigration enforcement to an additional, burdensome penalty lap. Nor is the burden insignificant; when combined with the County's requirement that Genesis receive a permit before engaging in the work it will do on the Elkridge property, Section 1-102(b) acts as a prohibition on the federal Government's ability to operate the Elkridge project unless it complies with this punitive review process. And this is a review process that *only* facilities contracted for and/or leased by the federal Government must follow, not any other similarly situated state facilities.

Because Genesis is likely to succeed on the merits of its constitutional claims for declaratory and injunctive relief, they cannot be dismissed. The same is true of Genesis's claim under Section 1983. This case is not a general preemption challenge to a state law and Genesis is not generally invoking the Supremacy Clause as the source of a right. Instead, Genesis is invoking its rights under the Supremacy Clause and the Immigration and Nationality Act ("INA") to be free from State and local interference when carrying out federal Government functions at federal Government direction. And because Genesis is acting as the federal Government's contractor, it may also invoke the federal Government's right to be free from burdensome and discriminatory regulation by the County.

3

Genesis's Motion for a Preliminary Injunction should be granted and the County's Motion to Dismiss should be denied.

## I.    Legal Standard

The standards for preliminary injunctive relief were set forth in Genesis's opening brief. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the Court must accept as true all well-pled factual allegations and draw all reasonable inferences in the non-moving party's favor. *Id*.

## II.    The Constitutionality of Section 1-102(b) as Applied to the Elkridge Project is Ripe for Review.

The State advances a strained, and incorrect, argument that Genesis's challenge to the County's application of Section 1-102(b) is unripe. On the State's view "Genesis has brought an as-applied constitutional challenge to Howard County's application of Section 105.6 of the Howard County Building Code" and any challenge to Section 1-102(b) is unripe because "Section 1-102(b) did not compel Howard County to revoke Genesis's permits." State Br. at 13-14.

The State is wrong. Genesis's as-applied challenge to Section 1-102(b) is plainly ripe. A case is ripe if the "controversy is final and not dependent on future uncertainties." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022). That is easily satisfied here. There is no uncertainty about the County's view that Section 1-102(b) applies to the Elkridge project and its application of that provision to Genesis. The sole reason for the County's revocation of Genesis's permits was "Pursuant to the Annotated Code of Maryland —§ 101 and § 102." ECF

4

16-6.  Section 105.6 of the Howard County building code was merely the procedural mechanism for revoking the permits.  Section 1-102(b) was the substantive driver of the decision.  That decision is resulting in a tangible ongoing injury to Genesis that would be redressed if the Court held that the County cannot lawfully apply Section 1-102(b) to Genesis.  *See infra* at 24.  *Nothing* about this controversy is speculative.

Contrary to the State's claim, the fact that the County chose to revoke the permits and has not actually begun the comment period does not render this dispute unripe.  State Br. at 15.  The County plainly enforced Section 1-102(b) when it revoked Genesis's permits and nothing about the constitutionality of applying Section 1-102(b) would be further developed by the County starting the notice and comment period.  Nor does it matter whether the permit may or may not have been delayed if the County applied Section 1-102(b) earlier, as the State speculates.  *Id*. at 16.  That is not what happened in this case where the County's belief that Section 1-102(b) applies to the Elkridge project is undeniably resulting in an ongoing injury to Genesis and delay of the project given that the County still has not started the notice and comment process.

But even if the Court does not think the County has enforced Section 1-102(b), pre-enforcement as-applied constitutional challenges are ripe for review if there is a "credible threat of prosecution."  *Preston v. Leake*, 660 F.3d 726, 735–36 (4th Cir. 2011).  That is certainly the case here where the State agrees that Section 1-102(b) should be applied to the Elkridge project and suggests that, even if the permits were not revoked, Genesis could either be sued because the Section 1-102(b) requirements were not satisfied.[1]  State Br. at 15.

---

[1] The State also suggests that Genesis could bring a mandamus proceeding to require the County to start the notice and comment period.  State Br. at 15 n.5.  But Genesis's position is that the notice and comment period cannot be applied to the Elkridge project, which is precisely why the controversy is ripe for resolution.

In this regard, the State and the County are saying that the permits issued to the Elkridge facility are rendered invalid by Section 1-102(b).  The County is saying so through revoking them. The State is saying so by declaring open season on the project and that it is illegal and subject to suit if construction progressed because Section 1-102(b) was not complied with.  One thing is clear:  The constitutionality of Section 1-102(b) as applied to this project, and as the basis of starting a 180-day-plus delay in federal Government operations after the building is 90 percent completed, is fully ripe for presentation to the federal courts.

At bottom, the State's argument is just an additional affirmation that the County's permit revocation and application of Section 1-102(b) was unlawful because, on the State's view "Section 1-102(b) did not compel Howard County to revoke Genesis's permits."  State Br. at 13.  The Court can resolve the constitutional question now because no further administrative proceedings would clarify the legal issue: whether Section 1-102(b) may be applied to delay or prevent the Elkridge project.

## III.    Genesis is Entitled to a Preliminary Injunction.

### A.    Genesis is Likely to Succeed on the Merits of its Constitutional Claims  (and States Claims for Relief) because Howard County's Effort to Enforce Section 102(b) of the Maryland Corrections Article is Unlawful and Unconstitutional.

#### 1.    Genesis is Properly Challenging the Validity of Section 1-102(b) as Applied by the County.

As an initial matter, the County's briefing includes several incorrect statements about the scope of Genesis's arguments.  First, the County wrongly claims numerous times that "Genesis has not challenged the validity of the Correctional Services Article."  MTD at 13; *see also id.* at 7 ("Genesis has not challenged this same state statute, even after the Court's guidance regarding the State statute pursuant to the partial grant of the County's motion to dismiss."); Cnty. Resp. at 21 ("The state law, which is applicable, is not alleged to be invalid . . . ").  To the contrary, Genesis

challenges Section 1-102(b)'s validity in this case throughout its Amended Complaint and its Supplement to the Motion for a Preliminary Injunction where it argues that the statute could not be validly applied by the County to revoke Genesis's permits because that application is unconstitutional.  *See* ECF 40 at 17-23; ECF 41.  Genesis's challenge is an "as-applied" challenge, which "requires only that the law is unconstitutional as applied to the challenger's case. . . " *United States v. Lane*, 689 F. Supp. 3d 232, 237 (E.D. Va. 2023).  This is just as much a challenge to the validity of Section 1-102(b) as a facial challenge would be.  *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation.").

Second, the County states that "Genesis has not asserted that the state statute is preempted by federal law."  MTD at 16.  But even a cursory glance at Genesis's amended complaint and Supplement to its Motion for a Preliminary Injunction reveals that Genesis does just that.  *See* ECF 40 ¶114 ("[i]t is also preempted by federal law, which exclusively gives Congress and the Executive Branch of the federal Government, acting under delegation from Congress, the authority to regulate the time, place, and manner of immigration enforcement."); ECF 41 at 9.

Third, the County suggests that to challenge the validity of Section 1-102(b) required Genesis to name the State of Maryland as a party.  MTD at 16.  Genesis does not need to do this. It was the County and its officers that purported to apply the statute to revoke Genesis's permit. Genesis has given the State the requisite notice under Federal Rule of Civil Procedure 5.1, and the State has now provided its briefing in this case.

### 2. Applying Section 1-102(b) to Revoke Genesis's Permits Directly Regulates the Federal Government.

The County's application of Section 1-102(b) violated the intergovernmental immunity doctrine by "impos[ing] a burden on the national government tantamount to an interference . . . with the . . . performance of its functions.'" *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 322 (3d Cir. 2025). (quoting *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 481 (1939)). Specifically, the County's action directly interferes with the federal Government's immigration enforcement by requiring a government facility that the federal Government will lease and operate for immigration enforcement purposes to be delayed by at least 180 days and to be the subject of *at least* two public hearings. *See* Maryland Correctional Services Code §1-102(b). This "prevents the federal Government from choosing how and through whom it will carry out a core federal function" by requiring the federal Government to go through this potentially indefinite penalty lap if it chooses to lease an immigration facility. *CoreCivic, Inc.*, 145 F.4th at 325; *see also Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 757 (9th Cir. 2022) (holding that law impermissibly regulated the federal Government where it would "give California a 'virtual power of review over the federal determination' of appropriate places of detention[.]').

In response, the County attempts to downplay this direct regulation and burden by asserting that it "has not sought to compel anything of the federal government." Cnty. Resp. at 14. But Howard County generally requires "any owner or owner's authorized agent" doing the work that Genesis will be doing in the Elkridge project to "obtain the required permit." ECF 18-2 (Howard County Building Code § 105.6). By requiring the issuance of a permit, the County cannot then also condition that issuance on imposing a direct burden on the federal Government, in the shoes of which Genesis is acting as the federal Government's contractor. *CoreCivic, Inc.*, 145 F.4th at 325 ("state regulations 'on contractors are constitutionally invalid' under the intergovernmental-

8

immunity doctrine 'if they ... substantially interfere with [the federal government's] activities.') (quoting *HMO of N.J., Inc. v. Whitman*, 72 F.3d 1123, 1132 (3d Cir. 1995)).  This is exactly what the County's application of Section 1-102(b) does here.

The State, for its part, argues that "the statute does not impermissibly regulate the federal government because the federal government voluntarily required Genesis to comply with all applicable state and local permitting obligations,"  State Br. at 17–18, pointing to a provision in the lease entitled "compliance with applicable law."  Lease No. GS-03PLMD00795, Ex. F, ¶ 14, at 69.  This amounts to an argument that the lease provision waived the federal Government's (and Genesis's) rights under the Supremacy Clause.  Such a waiver requires that the language "provid[e] 'clear and unambiguous' authorization for' this kind of state regulation."  *United States v. Washington*, 596 U.S. 832, 840 (2022) (quoting  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988)).  The language of the lease provision does not clearly and unambiguously subject the federal Government to state permitting requirements that single out the federal Government or directly regulate it.  The provision is simply a general statement that Genesis "shall comply with all Federal, state, tribal, and local laws applicable to its ownership and leasing of the property and . . . and obtain all necessary permits."  Lease No. GS-03PLMD00795, Ex. F, ¶ 14, at 69.  Like the general worker's compensation provision that the Supreme Court held did not create a waiver in *Washington*, "[o]ne can reasonably read the" the provision as "only authorizing a State to extend its generally applicable" laws and permitting requirements.  *Washington*, 596 U.S. at 840.  Moreover, the provision speaks only of laws "applicable" to Genesis's ownership and leasing of the property.  Lease No. GS-03PLMD00795, Ex. F, ¶ 14.  A permit requirement, like Section 1-102(b), that impermissibly regulates the federal Government cannot be "applicable" to the Elkridge property.  That is unconstitutional.   Finally, only the Congress through duly enacted

9

legislation can authorize States and their subdivisions to exercise certain powers reserved by the Constitution to the federal Government. *Hancock v. Train*, 426 U.S. 167, 179, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) (waiver occurs "only when and to the extent there is a clear *congressional* mandate." (emphasis added) (internal quotation marks omitted). An ambiguous phrase in a lease drafted by unknown personnel in the Executive Branch does not qualify.

The State also erroneously contends that there is no improper regulation because it asserts that Section 1-102(b) does not "prohibit any immigration detention" facilities. State Br. at 19. But there is no "*de minimis* exception" to the doctrine of intergovernmental immunity and "[a]ny economic burden that is discriminatorily imposed on the federal government is unlawful." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019). In any event, the combination of Howard County's requirement that Genesis obtain a permit for the Elkridge project, along with the County's view that Section 1-102(b) applies to the Elkridge project means that the federal Government is prohibited from operating a leased immigration facility unless it complies with the waiting period and hearing requirements of Section 1-102(b). This impact on the federal Government is directly analogous to the delay and burden caused by the state approval requirement in *Pub. Utilities Comm'n of State of California v. United States*, 355 U.S. 534 (1958) and the licensing requirement for federal employees in *Leslie Miller, Inc. v. State of Ark.*, 352 U.S. 187 (1956). The laws at issue in those cases were not total bans on the federal Government carrying out its functions, but they were still unconstitutional because they delayed and controlled the federal Government in carrying out its functions. So too here.[2]

---

[2] The State attempts to distinguish these cases on the ground that they "concerned state laws requiring federal contractors to obtain specific licenses or permits, which Section 1-102(b) does not." State Br. at 20 n.7. But, as just discussed, Section 1-102(b) is an overlay on the County's general requirement that Genesis obtain a permit; it is therefore just as much a special condition

The practical effect is decisive. Without County permits, Genesis cannot complete the federally leased facility. And under the County's view, those permits cannot be restored unless Genesis first completes a special process imposed because the facility will serve federal immigration functions. That is not a neutral background rule; it is a state-law condition on the federal government's chosen means of carrying out a federal function.

Similarly unavailing are the State and the County's attempts to analogize this case to those where courts have upheld state laws that indirectly imposed costs on the federal Government in a "in a neutral, nondiscriminatory way." *Nwauzor v. GEO Grp, Inc.*, 127 F.4th 750, 761 (9th Cir. 2025) (*petition for certiorari pending and views of the Solicitor General called for by the Supreme Court on May 18, 2026*, Sup. Ct. Case No. 25-828). These include the application of general state minimum wage laws to private contractor-run immigration facilities, *id*., as well as a tax on a federal contractor storing oil for the federal Government, *see Esso Standard Oil Co. v. Evans*, 345 U.S. 495, 499–500 (1953). State Br. at 20; Cnty Resp. at 14-15. But when upholding such laws, "the Supreme Court has specified that those regulations did not control or obstruct federal functions." *Geo Grp., Inc.*, 50 F.4th at 756 n. 5. Here, by contrast, the County's application of Section 1-102(b) is neither indirect nor neutral and obstructs a federal function. The County is applying Section 1-102(b) to the federal Government directly and singling it out. Moreover, the delay and hearing obligations imposed on the federal Government by Section 1-102(b) obstruct a federal function—they are directly targeted at delaying the federal Government's building of a facility for immigration enforcement purposes.

---

and requirement for the federal government to lease a detention facility as the licensing rules in *Pub. Utils. Comm'n* and *Leslie Miller* were.

The County's argument that its application of Section 1-102(b) "simply decline[s] to ease the burden of civil immigration enforcement," Resp. at 16 (quoting *United States v. New York*, 810 F. Supp. 3d at 353), fares no better. The County is directly burdening the federal Government. This is not like the cases the County cites where the State would not allow ICE to use its public facilities to make arrests, *see New York*, 810 F. Supp. 3d at 353, or declined to share immigration information with ICE officers that the State would not otherwise share even with its own law enforcement personnel. *See McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 594 (7th Cir. 2022). Here, by contrast, the County is attempting to prevent the federal Government from carrying out immigration enforcement in its own facility that otherwise meets all the County's other approval requirements by imposing a special, additional burden that the State chose to impose of buildings performing a function that only the federal Government can authorize "immigration detention." Just as in *United States v. Town of Windsor, Conn.*, 765 F.2d 16, 19 (2d Cir. 1985) "[e]nforcement of the substance of the permit requirement against the contractors would have the same effect as direct enforcement against the Government" and impermissibly burden the government.[3]

Both the State and the County give away the game in their characterization of what Section 1-102(b) is supposed to do. The State's effort to justify the statute through public opposition, as well as the conditions at unrelated ICE facilities, underscores that the law is not ordinary neutral land-use regulation, but a targeted burden on federal immigration operations. *See* State Br. at 27 n.12 (noting that the hearing requirement may cause ICE to change its plans because "public reporting shows that the federal government has already repeatedly cancelled proposed

---

[3] The County views *Town of Windsor* as "a useful contrast." Resp. Br. at 13. There is no contrast, just as in *Town of Windsor*, the County is seeking to enforce Section 1-102(b) to prevent Genesis from receiving a permit and thus delivering the Elkridge property to the federal Government as required under the lease.

12

immigration detention facilities in the face of community feedback."); *id*. at 24 ("Given that the federal government recently was found to have subjected detainees to unconstitutionally overcrowded conditions . . . it is plainly reasonable for the State to be concerned about the health and safety impacts of detention space located in office buildings."). Similarly, the County describes Section 1-102(b) as "*regulat[ing]* [the Elkridge project] such that the public may be aware of it and be heard with respect to its permission before that permission is granted" that "may or may not result in public input that persuades changes be made by the federal government." Cnty. Resp. at 13 (emphasis added). These admissions confirm that the goal of applying Section 1-102(b) to the Elkridge project is to control and obstruct the federal Government's immigration enforcement efforts. That is prohibited by the "direct regulation" prong of the intergovernmental immunity doctrine.

> **3.   Applying Section 1-102(b) to Revoke Genesis's Permits Discriminates Against the Federal Government.**

The County's use of Section 1-102(b) also "discriminate[d] against the federal government" by "treat[ing] someone else better than it treats the government." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014). The County's reading of Section 1-102(b) to apply to facilities run by the federal Government both "single[s] [the federal government and its contractors] out' for less favorable 'treatment,'" or "regulates them unfavorably" *United States v. Washington*, 596 U.S. at 839 (first quoting *Washington v. United States*, 460 U.S. 536, 546 (1983), then quoting *North Dakota*, 495 U.S. at 438). It does so by imposing a punitive notice and comment period on "immigration detention facilit[ies]," Maryland Correctional Services Code §1-102, when "the only entity in the business, so to speak, of [buying private] immigration det[ention] is the federal government." *CoreCivic, Inc.*, 145 F.4th at 325 (quoting *United States v. King Cnty.*, 122 F.4th 740, 757 (9th Cir. 2024)).

13

The County and State do not dispute that the statute singles out the federal Government but claim that Genesis failed to sufficiently identify a comparator who is treated more favorably than the federal Government. Cnty. Resp. at 16. But Genesis did just that by referring to "other building project[s], including other I-3 detention facilities that are not for immigration" which are not Section 1-102(b)'s restrictions. ECF 41 at 9. Section I-3 includes facilities such as "[c]orrectional centers[,] [d]etention centers[,] [j]ails, [p]rerelease centers[,] [p]risons[,] [and] [r]eformatories." International Building Code (2021), § 308.4. If anything, these facilities are far more devoted to detention, for a longer period of time, than the Elkridge project would be, yet Section 1-102(b)'s notice and hearing provisions do not apply to them. The Elkridge project is overwhelmingly an office project with only 4% to be used as temporary holding rooms for individuals temporarily detained by DHS officials for processing purposes. Hartsell Decl. ¶ 8. In light of this, the Elkridge project should be treated at least as well as other state-run I-3 facilities. But it is plainly being treated more harshly. At this stage, Genesis has met its burden to show that these *are* valid comparators.[4]

In any event, a comparator is not necessary because the County's application of Section 1-102(b), like the law at issue in *United States v. Washington,* discriminates against the federal Government "[o]n its face" by applying to facilities that only the federal Government would use and contract for. *Washington*, 596 U.S. at 839. This is further demonstrated by the numerous statements made by county legislatures surrounding the revocation of Genesis's permits, as well

---

[4] *Immigrant Legal Res. Ctr. v. City of McFarland*, 478 F. Supp. 3d 988, 999 1002 (E.D. Cal. 2020), which the State cites, is not to the contrary. Along with being a vacated opinion, *see* 827 F. App'x 749 (9th Cir. 2020) (per curiam) the case involved a situation where a recent change in the law made it such that the federal contractor might actually be treated better than similarly-situated state contractors. *City of McFarland*, 478 F. Supp. 3d at 999. The State has not identified any similarly situated facility that is subject to the same onerous provisions as Section 1-102(b).

as statements described above in both the County and State's briefing, which demonstrate that the action was taken specifically to single out and disfavor federal immigration policy. *See* ECF 16-1 at 23-25; *see supra* at 12-13.

This is not like the laws at issue in the *New York*, *United States v. Illinois*, 796 F. Supp. 3d 494, 534 (N.D. Ill. 2025) or *McHenry Cnty.* cases cited by the County and the State. *See* Resp. at 16. Those cases involved the relevant state's refusal to allow federal immigration officials to use state facilities or pieces of information that were not generally available for the purpose of immigration enforcement. *McHenry Cnty.*, 44 F.4th 581, 594; *New York*, 810 F. Supp. 3d at 354. Here, by contrast, the County's application of Section 1-102(b) places a special discriminatory restriction on federal Government activity on the generally available permitting process. This is similar to the policy of a county-owned airport that the Ninth Circuit held discriminated against the federal Government by prohibiting ICE to use the airport to charter deportation flights. *King Cnty., Washington*, 122 F.4th at 757–58. Just as in *King County*, the County's application of Section 1-102(b) here "discriminatorily burdens the United States specifically because of federal immigration operations, based on the County's disagreement with federal policy." *Id*.

Nevertheless, the State argues that the discrimination is justified for two reasons. Neither is valid. First, the State argues that the Elkridge project is differently situated from other state facilities because the portion of it that will be used for detention would be "used to detain individuals accused of civil violations, not criminal ones." State Br. at 22. But even the State admits that this is not a unique feature because there are "other state civil detention facilities," State Br. at 23, and these are not subject to Section 1-102(b). Nor does the State give any reason why the temporary and civil nature of any detention that would be conducted at the Elkridge property should be subject to a greater regulation than "I-3 detention facilities for those charged

15

with or convicted of crimes," State Br. at 22, which include facilities where detainees are held overnight and for extended periods.

Second, the State asserts that it is relevant that immigration detention facilities can be in "office buildings, which themselves may be located in residential or business districts." State Br. at 23. But the State does not even assert that offices with temporary immigration detention are the only types of civil detention areas located in office buildings. Nor does the State identify what aspect of temporary immigration holding in a small portion of an office building justifies subjecting the building to greater regulation than other detention facilities. The State points to allegations of poor conditions at other, very different, immigration facilities, State Br. at 24, but it fails to show how this is related to anything particular to immigration facilities. After all, immigration detention facilities are not the only ones to spawn litigation. *See e.g., Duvall v. Hogan*, No. CV ELH-94-2541, 2020 WL 3402301, at *1 (D. Md. June 19, 2020) (describing litigation "which has endured for nearly six decades, concern[ing] the health, welfare, and safety of pretrial detainees held at the Baltimore City Detention").

Ultimately, the State points to unspecified "health and safety impacts of detention space located in office buildings." State Br. at 24. Section 1-102(b) as applied by the County does not require notice and comment based on "health and safety impacts" or even based on whether a facility is a portion of an office building. Instead, like in *King County.,* 122 F.4th at 758 the burden is imposed on immigration detention facilities "because of their role in carrying out the federal immigration laws." That is unconstitutional discrimination.

### 4.    Applying Section 1-102(b) to revoke Genesis's permits is preempted.

The County's application of Section 1-102(b) to revoke Genesis's permits is also preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373

(2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).  Contrary to the State's assertion, this is not "speculation."  State Br. at 25.  The United States explained in its Second Statement of Interest, the County's application of Section 1-102(b) serves as an obstacle "delay[ing] or foreclose[ing] a choice approved by Congress and require[ing] the federal Government either (i) to own the facility and seek all necessary permits directly or (ii) to substantially delay or forego detaining aliens in Howard County and use only less suitable facilities in other Maryland counties or states, such as the Fallon Federal Building."  ECF 51 at 9-10.  The County's permit revocation based on Section 1-102(b) also "interferes with the INA's authorities and directives regarding detaining aliens pending removal or a decision on removal."  *Id*. at 10.  This is contrary to the express Congressional policy that the federal Government rent "facilities adapted or suitably located for detention[,]" 8 U.S.C. § 1231(g)(1), and the preference for renting facilities over acquiring new ones, providing that the latter should only be done when facilities are "are unavailable for rental[.]"  *Id*.  It is also contrary to Congressional grant of discretion to the Department of Homeland Security to determine when, where, and how to house immigrant detainees.  *See* 8 U.S.C. §§ 1222, 1225, 1226, 1226a, 1231.

Genesis also agrees with the United States that the Immigration and Nationality Act establishes "field preemption" in this area—detention of immigration detainees—that federal law occupies exclusively.  *See* ECF 51 at 8 n.5 (citing 8 U.S.C. §§ 1231(g), 1103(a)(11); 6 U.S.C. § 112(b)(2); 18 U.S.C. § 4013; 28 U.S.C. § 530C(a)(4); 48 C.F.R. § 3017.204-90).  These provisions "reflect[] a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."  *Arizona v. United States*, 567 U.S. 387, 401 (2012).

This directly rebuts the County's assertion that Genesis is relying only on a "uniquely federal interest."  Resp. at 8 (quoting *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1094 (2026)).

17

Though, to be sure, immigration enforcement is a power with which the federal Government is "exclusively entrusted ...." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). But Congress told the federal Government to exercise this role through leasing land and facilities from the private sector. 8 U.S.C. 1231(g). The County's actions stand in direct opposition to the express statutory policies and commands described above and must be held unlawful. *CoreCivic*, 145 F.4th at 328 (proliferation of state restrictions on immigration authority "would 'destroy the federal function.'") (quoting *United States v. Fresno Cnty.*, 429 U.S. 452, 463 n.11 (1977)); *Geo Grp.* 50 F.4th at 762 (holding that there was a "'conflict between [AB 32's] requirement . . . and the action which Congress and the Department [of Homeland Security] have taken to insure the' appropriateness of facilities to house detainees.") (quoting *Leslie Miller*, 352 U.S. at 190).

The County and the State are saying that, if the federal Government wants its employees to engage in even temporary immigration detention, it should buy some property. If Congress told the Executive Branch to do so on leased property instead, the State is telling Congress to jump in a lake. That is exactly what the preemption aspects of the Supremacy Clause forbid.

The County objects that these statutes do "not address the permitting, inspection, or construction process for those facilities." Cnty. Resp. at 7. That slices too thinly. The import of the INA provisions described above is that the outcome of any state building, inspection, or construction process cannot be an obstacle to the general congressional policy favoring leasing immigration detention facilities and giving DHS the discretion about when, where, and how to house immigrant detainees. Nor has the County identified any preexisting right to delay the construction of federal immigration facilities akin to the common law right that the State in *New York*, 810 F. Supp. 3d at 340, identified protecting citizens from arrest in courthouses and similar government buildings. Similarly, the State's reliance on *Geo Grp., Inc. v. Inslee*, 151 F.4th 1107,

18

1124 (9th Cir. 2025) is misplaced.  The law at issue in *Inslee* did not concern the federal Government's authority to decide when, where, and how to detain those suspected of immigration offenses, it imposed health and safety conditions generally on facilities operated by private contractors.  *Id*.  Moreover, unlike here, the contract between the contractor and ICE in *Inslee* specifically stated provided that "Should a conflict exist between" federal and state standards of providing services at the facility, "the most stringent shall apply."  *Id*. at 1117.  No such similar provision exists in the lease.

The County asserts that the "applicable federal law to consider for potential preemptive effect . . . is 40 U.S.C. § 3312."  Cnty. Resp. at 8–9.  But, assuming 40 U.S.C. § 3312 applies to this project, it further supports preemption.  It explicitly excludes "procedural requirements" from the state zoning laws that the federal Government will consider when GSA constructs or renovates a building.  Under the County's reading, Section 1-102(b) is a punitive procedural requirement \The only purpose served by the requirement is to delay and obstruct the federal Government and to punish federal contractors by burdening the time value of money on which private contractors rely to complete projects like this for the federal Government.

Additionally, as with the statute requiring the federal Government to be subject to workers' compensation laws did in *Washington*, 40 U.S.C. § 3312 "does not 'clearly and unambiguously' authorize a State to enact a discriminatory law that facially singles out the federal Government for unfavorable treatment."  596 U.S. at 840.  Instead, its plain text is best read as "only authorizing a State to extend its generally applicable" permitting laws.  Specifically, the statute requires the federal Government to "consider[]" only those state zoning requirements"[that] would apply to the building if it were not a building constructed or altered by a federal agency."  40 U.S.C. § 3312.

19

On the County's reading Section 1-102(b) is not a generally applicable law but is instead only applicable to the federal Government because of its carrying out of a federal function.

Finally, the State's assertion that the County's application of Section 1-102(b) is not an obstacle to the federal Government's immigration policy because it "merely imposes a procedural step unlikely to delay the permitting process," State Br. at 25, is wrong for several reasons. First, as applied here, Section 1-102(b) has certainly delayed the permitting process and, despite the Court's questions at the hearing, the County still has not begun the required notice and comment period.

Second, the text of Section 1-102(b) makes clear that its intent is to delay, potentially indefinitely, and burden private contractors from being able to construct facilities that the State has defined as immigration detention facilities.  The provision states that the waiting period must be "at least" 180 days and involve "at least" two public hearings.  Even if this process did not result in a delay, it is still an additional burden that the federal Government must endure only if it chooses to lease immigration facilities, as Congress has instructed it to.  8 U.S.C. § 1231(g)(1).

Third, the State's claim that this provision is designed to do anything other than make it more difficult for the federal Government to commission the construction of immigration detention facilities is belied by its numerous overtures in its brief to what it perceives to be the unique threat of immigration facilities and its view that the law could result in the federal Government deciding to change its plans.  *See* supra at 12-13.  Indeed, because the "the six-month notice-and-comment requirement does not prescribe any specific outcome," State Br. at 26, and could not lawfully result in denying a permit, its only possible purpose could be to obstruct the federal Government.  Section 1-102(b) is, on its face an absolute penalty lap imposed on federal immigration activities.  There is absolutely no other reasonable interpretation of this toothless provision aimed purely at delay,

delay, delay until the private contractor's financing is exhausted.  That's exactly what is happening here.

### 5. Granting Genesis relief does not violate the Anti-Commandeering Doctrine.

The County also incorrectly argues, for the first time, that ordering the County to issue Genesis's unlawfully revoked permits "violates the Constiution" and violates the anti-commandeering principle of the Tenth Amendment.  Cnty. Resp. at 10.  The anti-commandeering doctrine prevents the federal Government from "compel[ling] the States to implement, by legislation or executive action, federal regulatory programs." *California*, 921 F.3d at 888.  To be "commandeering" a federal Government action must require a state to "enact and enforce" or otherwise "administer" a federal Government program.  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472 (2018).  It is not commandeering "to lift a discriminatory prohibition on private parties' ability to engage in business with the federal government that supports federal immigration efforts."  *King Cnty., Washington*, 122 F.4th at 758.  Thus, the Ninth Circuit in *King County.,* rejected a similar argument that lifting the defendant's discriminatory prohibition on ICE's use of charter flights violated the anti-commandeering doctrine.  *Id*.

So too here.  As an initial matter, no one is asking the State or the County to get involved in a topic or activity of which it is otherwise steering clear.  Instead, the State and the County are restricting construction activity *in the absence of a permit*.  So the permitting process is a part of and integrated with the State and the County's restriction of construction activity.  That overall restriction cannot be administered in a way that violates the U.S. Constitution.  This case is a far cry from the ones that the County cites where the courts held that the federal Government was seeking to have the states actively aid its enforcement of immigration law.  *See McHenry Cnty.*, 44 F.4th 581, 594; *New York*, 810 F. Supp. 3d at 354.

21

The County also points to the fact that it was acting pursuant to a state law.  Cnty. Resp. at 12-13.  But "the restraints imposed by the Constitution on the States [cannot] be circumvented by local bodies to whom the State delegates authority."  *Sailors v. Bd. of Ed. of Kent Cnty.*, 387 U.S. 105, 109 (1967).  And the fact that the County was acting pursuant to a state law cannot prevent the Court from holding that the law was unlawfully applied because that is the case in any intergovernmental immunity and preemption challenge where local or state officials are generally acting pursuant to a state law or policy.

Genesis does not ask the Court to require the County to administer a federal immigration program. It asks only that the County be barred from using an unconstitutional state-law obstacle to withhold permits that the County had already issued and revoked solely because of Section 1-102(b).

> **6.    The action of Howard County officials, including revoking Genesis's permits under Section 1-102(b) violated the Contract Clause.**

The County's revocation of Genesis's permits unconstitutionally interfered with the Lease between Genesis and the federal Government for the renovation of the Elkridge property. *See Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, 563 F. Supp. 3d 428, 449–50 (D. Md. 2021) (the states are prohibited "from passing any law 'impairing the Obligation of Contracts.'") (quoting U.S. Const., Art. I, Sec. 10).  The County singled-out Genesis and the federal Government's agreement for particularly negative treatment and purported to use a statute that applies only to a narrow class of contracts that *only* can be entered into by the federal Government and that even the State agrees should not have been a basis to *revoke* Genesis's permits.  *See* State Br. at 14.  The record reflects that the County did so after political pressure, *see* ECF 16-1 at 23-25, even though the County knew by as early as April 2025 that the facility would

be used by Immigration and Customs Enforcement. *See* Hartsell Decl.[5]  Therefore, the County's

impairment of Genesis and the federal Government's lease was not "permissible as a legitimate

exercise of the state's sovereign powers." *Baltimore Tchrs. Union, Am. Fed'n of Tchrs. Loc. 340,*

*AFL-CIO*, 6 F.3d 1012, 1015 (4th Cir. 1993).

In response, the County focuses almost entirely on arguing that Section 1-102(b) applied

to the Elkridge project.  MTD at 15-17.  For the reasons Genesis has stated in its prior briefing,

Genesis disagrees that this was the proper reading of the statute.  But even assuming the statute

applied, the County's last-minute application of it was unconstitutional. It was not an application

of traditional zoning regulation—as the County attempts to characterize it, *see* MTD at 16 (*quoting*

*Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926))—but a politically motivated

effort to impair a lease between Genesis and the federal Government.  Even the State contends that

the statute is no justification for the County's deliberate impairment of the contractual obligations

between Genesis and the federal Government.  State Br. at 13.

**B.**    **Genesis Continues to Suffer Irreparable Harm, and the Public Interest Favors an Injunction.**

Genesis also satisfies the irreparable harm and public interest requirements for a

preliminary injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 12 (2008).

Puzzlingly, the County states that Genesis "makes no attempt at all to show it will sustain a

---

[5] The County's recently submitted declaration from Donald Mock does nothing to create a factual dispute on this point.  See ECF 55-3.  In the declaration, Mr. Mock does not deny that an Immigration and Customs Enforcement representative was on the call but states that he "do[es] not recall, if [he] ever knew" that personnel from Immigration and Customs Enforcement were at the meeting.  *Id*. at ¶5.  It is blackletter law that "a witness who states that he cannot remember whether or not an event alleged to have happened by the moving party actually took place does not help the nonmoving party to meet its burden" to show a genuine dispute of material fact. *Cox v. United States*, No. 1:12CR245-1, 2015 WL 1040577, at *3 (M.D.N.C. Mar. 10, 2015), *report and recommendation adopted*, No. 1:12CR245-1, 2016 WL 792432 (M.D.N.C. Feb. 26, 2016) (quoting *Chandler v. James,* 985 F.Supp. 1094, 1100 (M.D. Al. 1997) and collecting cases).

particularized harm in the event that the Court denies its request for injunctive relief." Cnty. Resp. at 18. Genesis has done that and then some at each stage of this litigation. The ongoing harm to Genesis includes interest costs mounting at a rate of more than $5,000 *every day* the permits are unlawfully withheld, Hartsell Decl. at ¶ 29, and the inability secure more financing from its bank until the project is completed, turned over to the federal Government, and rent payments under the lease commence. Hartsell Decl. at ¶ 33. The County has not even attempted to rebut the fact that these economic harms are generally irreparable because Genesis is suing government officials. *See, e.g., Harbor Side Grill, LLC v. City of Annapolis*, 2026 WL 636867, at *16 (D. Md. Mar. 6, 2026). The result being that Genesis's business is paralyzed, and bankruptcy is a real possibility absent preliminary relief. Hartsell Decl. at ¶¶ 32–36.

Genesis is plainly seeking to prevent further irreparable harm to itself not to "ensure preservation of legal theories that are asserted on behalf of an absent party," as the County claims. Cnty. Br. at 19. Further, Genesis is suffering irreparable harm because it has shown a likelihood on the merits that the County violated the Constitution. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021).

It is simply not true that finding irreparable harm here would mean that "every economic actor who simply states that it does business with the federal government would be entitled to federal injunctive relief to proceed with construction projects without complying with state or local laws, without any demonstration to support such a statement." Cnty. Resp. at 19. Genesis has provided substantial support both for its irreparable harm and the merits of its claims. And Genesis has properly invoked this Court's role, which includes preventing unconstitutional actions by state and local governments from irreparably harming small businesses.

For similar reasons, the public interest favors injunctive relief because "the public interest favors protecting constitutional rights," *Leaders of a Beautiful Struggle*, 2 F.4th at 346 and the County is in no way "harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional." *Id*. (quoting *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (cleaned up)). And, as the United States points out in its Second Statement of Interest "[t]he current Fallon Federal Building space is insufficient for ICE's operational needs, presenting logistical and security challenges that directly impact personnel, detainees, and sensitive operations." ECF 50 at 10 (citing Mem. Op., *D.N.N. v. Liggins*, No. 1:25-cv-01613-JRR (D. Md. Mar. 6, 2026) (discussing detention conditions at that facility)).

The County, for its part, incorrectly states that the "federal government . . . is silent in this litigation." Cnty. Resp. at 20. But the United States has filed *two* Statements of Interest describing why this issue is important to the United States and why the County's action was unlawful. *See* ECF Nos. 24, 50.

## IV.    Genesis Properly States a Claim Under Section 1983.

Genesis also properly states a claim under Section 1983. To do so Genesis "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).[6] And Genesis may bring a Section 1983 claim against the County "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

---

[6] The County does not, and cannot, argue that Genesis is unable to seek injunctive relief for the County's constitutional violations, regardless of the merits of Genesis's Section 1983 claims. *See CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 739 (D. Md. 2017).

government as an entity is responsible [for] under § 1983." *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 554 (4th Cir. 2018).

Those requirements are met here. To be sure, "federal preemption of local ordinances pursuant to the Supremacy Clause is not actionable under Section 1983," *Maryland Pest Control Ass'n v. Montgomery Cnty., Md.*, 884 F.2d 160, 163 (4th Cir. 1989), and "the Supremacy Clause is not the source of any federal rights." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (internal quotations and citations omitted). But Fourth Circuit has rejected any blanket rule that "42 U.S.C. § 1983 does not provide" a remedy for a Supremacy Clause claim. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 348 n.12 (4th Cir. 2001). Where federal provisions "confer a right" upon a party, that party will have "standing to assert its Supremacy Clause claim under § 1983." *Id*.

Genesis's claims are not general preemption claims, they are claims based on the federal Government's, and by extension its contractors like Genesis's, right not to be interfered with by burdensome and discriminatory legislation. Discrete provisions of the INA—specifically Sections 1103 and 1231, which Genesis repeatedly cited to in its motion (see PI Motion at 2, 11–13, 16–17, 20–22)—vest the federal Government with exclusive authority to contract and lease space for immigration detention purposes. This federal authority confers upon Genesis, as a leaseholder under a federally authorized and federally preferred contractual arrangement, a right to operate free from state or local interference. Just as the license holder in *Waste Management* had standing to assert a Supremacy Clause claim under Section 1983, so too can Genesis as a leaseholder under the INA.

Importantly, a major purpose of the Reconstruction Amendments and legislation, including Section 1983, was to provide remedies against State interference with federally established rights

26

and functions. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of s 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial."). Front and center during Reconstruction was preserving the power of federal Government agents to act in the defeated States of the South, to enforce federal law and to carry our federal Government policy free of State interference. *Mitchell v. Clark*, 110 U.S. 633, 638, 4 S. Ct. 170, 173, 28 L. Ed. 279 (1884)( Generally describing how "[t]hroughout a large part of the theater of the civil war the officers of the army, as well as many civil officers, were engaged in the discharge of very delicate duties among a class of people who, while asserting themselves to be citizens of the United States, were intensely hostile to the government . . . ") That right preserved through intergovernmental immunity principles is personal, particularly when it is protecting private parties authorized by contract for the federal government to act. And Sections 1983 and 1988 are appropriately read in these circumstances to provide for the reimbursement of attorneys' fees and damages (when State officials cannot establish their qualified immunity) when they take actions unconstitutionally to interfere with federal Government contractors who have been commissioned to carry out federal Government policy.

As for its Contracts Clause claim, Genesis acknowledges that "the Circuits are split as to whether §1983 permits a plaintiff to bring a claim under the Contracts Clause." *Gallo v. D.C.*, No. 23-7158, 2025 WL 1446283, at *3 (D.C. Cir. May 20, 2025), *cert. denied*, 146 S. Ct. 302 (2025) and that the Fourth Circuit is currently on the side of the split that holds that a Section 1983 claim based on the Contract Clause is generally not viable. *See Crosby v. City of Gastonia*, 635 F.3d 634, 641(2011). But Genesis maintains and preserves the argument that the Fourth Circuit's

current position is incorrect and should be changed because "[t]he right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution" and that "The Supreme Court has explicitly given *Carter* a narrow reading and rejected the interpretation" that it prevents a party from bringing a Contracts Clause claim under Section 1983. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (citing *Dennis v. Higgins,* 498 U.S. 439, 454 n.9 (1991).

Finally, the County argues that it cannot have liability imputed to it because it erroneously contends that "Genesis has failed to identify any violation." MTD at 21 (internal quotation marks omitted). But, as shown above and its prior briefing, Genesis has more than plausibly shown that the County's revocation of Genesis's permit based on Section 1-102(b) violated the Supremacy Clause and the Contract Clause. Genesis has stated a Section 1983 claim.

## V.    CONCLUSION

For the foregoing reasons, the Court should issue a preliminary injunction (i) enjoining Defendants from enforcing Section 1-102(b) or any related legislative or administrative action, to the extent such enforcement impairs, restricts, or interferes with Genesis's rights and obligations under its federal lease and contracts, or otherwise conflicts with federal law or the United States Constitution and (ii) directing Defendants to reinstate or reissue and to issue in the future all permits, authorizations, and approvals necessary for Genesis to perform its obligations under its lease with the United States of America, acting through the GSA, for the Elkridge property as would normally occur without application of Section 1-102(b). The Court should also deny the County's motion to dismiss.

Dated this 29th day of June, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/Michael J. Edney*
Michael J. Edney (Bar No. 20646)
Torsten Kracht (Bar No. 16944)
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
(202) 739-3000
*Attorneys for Plaintiff Genesis GSA*
*Strategic One, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2026, I caused to be electronically filed copies of Plaintiff's Combined Reply in Support of its Supplement to its Motion for a Preliminary Injunction and Response to Defendants' Motion to Dismiss and all accompanying papers, via CM/ECF.

By:  */s/Michael J. Edney*
Michael J. Edney