**N THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **GENESIS GSA STRATEGIC ONE, LLC** | * |
| **Plaintiff,** | * |
| **vs.** | * **Civil Action No.: 1:26-cv-915 (ABA)** |
| **HOWARD COUNTY GOVERNMENT, *et al.*** | * |
| | * |
| **Defendants.** | * |

***************************************

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY THE PRELIMINARY INJUNCTION PENDING APPEAL**

## INTRODUCTION

The Court's preliminary injunction rests on a legally erroneous conclusion: that a neutral state permitting statute discriminates against the federal government merely because it addresses a subject — immigration detention — that only the federal government administers. That holding cannot be reconciled with the settled rule that a State discriminates against the federal government, "only if it treats someone else better than it treats them," and with the equally settled rule that, "the mere fact that [a law] touches on an exclusively federal sphere is not enough to establish discrimination." *Washington v. United States*, 460 U.S. 536, 544–45 (1983); *McHenry Cnty. v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022). Because the County has a strong likelihood of persuading the United States Court of Appeals for the Fourth Circuit that Md. Code Ann., Corr. Servs. § 1-102(b) is a neutral exercise of the State's police power that singles out no one for unfavorable treatment, which the County is required to follow, and because the remaining factors favor preserving the status quo ante while the Court of Appeals reviews a question of first impression, the Court should stay its injunction pending appeal.

The equities reinforce that conclusion. The injunction does not merely pause enforcement of a state law; it affirmatively commands County officials to reinstate permits that state law forbids and to treat an immigration-detention facility more favorably than the statute allows — relief in tension with the anti-commandeering principle. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472–73 (2018); *Printz v. United States*, 521 U.S. 898, 935 (1997). Meanwhile, the only harm Genesis has identified is monetary and, by the Court's own account, traceable to Genesis's decision to build without the process § 1-102(b) requires, harm that is neither irreparable nor a basis to deny a stay. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

## BACKGROUND

Genesis holds a lease with the federal government to renovate and deliver a building in Elkridge (the "Elkridge Property") for use by the General Services Administration, including provision for immigration detention. Memorandum Opinion, ECF No. 69, at 5 (Aug. 10, 2026) ("Mem. Op."). After issuing renovation permits, the County revoked them after it realized that they had been issued without legal authority because a public notice-and-comment process mandated by § 1-102(b) had not been satisfied. This provision requires the notice and comment before a local government may, "issue a permit for the construction of a building . . . by any private entity for use as an immigration detention facility." Mem. Op. at 9–10.

The Court held that § 1-102(b) applies to the Elkridge Property, rejecting Genesis's contrary reading. Mem. Op. at 36. The Court granted a preliminary injunction on Count I alone and on a single theory that the discrimination prong of the intergovernmental immunity doctrine precludes the County from delaying the grant of the building permit under the facts as the Court found them to be for purposes of the motion. Mem. Op. at 55. It dismissed Genesis's Contract Clause and § 1983 claims. Order ¶ 3 (ECF No. 70). The injunction vacated the revocation, reinstated both

permits and enjoined the County from obeying § 1-102(b) with respect to Genesis at the Elkridge Property. Prelim. Inj. ¶¶ 1–2 (ECF No. 71).

## LEGAL STANDARD

This Court may stay its own injunction pending appeal under Federal Rule of Civil Procedure 62(d), and the movant ordinarily must seek that relief in the district court first under Federal Rule of Appellate Procedure 8(a). The order granting the preliminary injunction is immediately appealable as of right. 28 U.S.C. § 1292(a)(1).

A stay pending appeal is governed by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434–35.

## ARGUMENT

### I. The County Has Made a Strong Showing That It Is Likely to Prevail on Appeal.

#### A. The dispositive question is legal and reviewed de novo and the injunction is a disfavored mandatory injunction.

The injunction turns entirely on a legal conclusion that § 1-102(b) discriminates against the federal government within the meaning of the intergovernmental immunity doctrine. The Fourth Circuit reviews a preliminary injunction for abuse of discretion but reviews the underlying legal conclusions *de novo* and a court necessarily abuses its discretion when it rests on an erroneous legal premise. *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 210 (4th Cir. 2024). That posture supports the County's prospects on appeal.

The standard is more demanding still because the injunction is mandatory, not prohibitory. It did not preserve the status quo; it ordered the County to reinstate revoked permits and thereby altered the last uncontested status between the parties. Such relief is "disfavored, and warranted only in the most extraordinary circumstances," *Pierce*, 97 F.4th at 209 (citations omitted) and is reviewed under an "even more searching" standard, *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 408 (4th Cir. 2025) (citations omitted).

**B. Section 1-102(b) does not discriminate against the federal government because it treats no comparator more favorably.**

Intergovernmental immunity bars only state laws that, "regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals"; a law that indirectly increases federal costs is valid, "so long as the law imposes those costs in a neutral, nondiscriminatory way." *United States v. Washington*, 596 U.S. 832, 838–39 (2022). A law discriminates only if it, "single[s] [the federal government] out" for less favorable "treatment" or regulates it, "unfavorably on some basis related to [its] governmental status." *Washington*, 596 U.S. at 838–39. The touchstone is comparison. "The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington*, 460 U.S. at 544–45. Whether discrimination exists "depends on how the State has defined the favored class," and the challenger must identify a similarly situated non-federal comparator that the State treats more favorably. *Dawson v. Steager*, 586 U.S. 171, 178 (2019); *North Dakota v. United States*, 495 U.S. 423, 438 (1990).

Genesis can identify no such favored comparator. Section 1-102(b)'s notice-and-comment requirement applies to every immigration-detention facility built or renovated by a private entity, without regard to the identity of the eventual operator. The County applied it as written. The Seventh Circuit's decision in *McHenry County* is directly on point, "[d]ifferential treatment is

critical to a discrimination-based intergovernmental immunity claim," where the challenger, "cannot identify any actors similarly situated to the federal government that receive more favorable treatment," and "the mere fact that the Act touches on an exclusively federal sphere is not enough to establish discrimination." *McHenry County*, 44 F.4th at 594. A law does not discriminate where it, "single[s] out" no one for less favorable treatment and imposes any burden, "in a neutral, nondiscriminatory way." *McHenry County*, 44 F.4th at 593.

Genesis has not alleged that the County applied, or even that it would apply, the state law provision to any other government differently than it has to the federal government. There is also no basis in fact from which one can infer that the County treats the federal government, in general, any differently than it treats other governments. The County is home to a variety of federal government-run buildings that were built in accordance with County permits. Genesis cannot show that the County followed the state law with respect to this building *because* it will eventually be a federal building. (Indeed, presently the building is not even a federal building, because there is no showing that it has been accepted pursuant to the contract.)

Although Genesis failed to offer any comparator in its Amended Complaint, the Court chose to compare other, non-immigration I-3 detention facilities, such as a courthouse holding cell, and reasoned that § 1-102(b) burdens immigration detention but not those facilities. Mem. Op. at 47. That reasoning inverts the doctrine. The relevant question is whether the State treats a *favored* non-federal class *better* than the federal government; a statute that addresses only a federal function does not thereby confer a benefit on some comparable non-federal actor. *Dawson*, 586 U.S. at 178–79; *Washington*, 460 U.S. at 544–45. The proper unit of analysis is "the entire regulatory system," not the narrowest slice of it, and a burden "imposed equally on other similarly situated constituents of the State" is not discriminatory. *North Dakota*, 495 U.S. at 438.

Independent of the absence of any favored comparator, the injunction reflects a legal error about what makes a neutral law "discriminatory" under the intergovernmental immunity doctrine. A State singles out the federal government for unfavorable treatment only when it burdens the government "on some basis related to [its] governmental status," — a requirement of causation, not mere correlation. *United States v. Washington*, 596 U.S. 832, 838–39 (2022). The disfavored treatment must fall on the federal government because of its federal character, not merely in spite of it. The Supreme Court has drawn precisely that line in the discrimination context, holding that a classification is not discriminatory as to a group unless it was chosen "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon" that group. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Section 1-102(b) meets no such causal test. It regulates all private entities (and only private entities) constructing immigration-detention facilities and imposes the same notice-and-comment prerequisite across the board, without regard to its relationship with the federal government. The fact that the requirement happens to burden the federal government follows only from the fact that ultimately the federal government is the entity that will conduct immigration detention. The statute is applicable to the Elkridge Property because of what is being built, not because the federal government will be the ultimate user. A burden borne in spite of, rather than because of, federal status is not the discrimination the doctrine forbids. *See McHenry Cnty. v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022) ("[t]he mere fact that the Act touches on an exclusively federal sphere is not enough to establish discrimination."). By treating § 1-102(b)'s incidental effect on a federal function as itself proof of discrimination, the Court eliminated the causal nexus the doctrine requires and conflated a law aimed at the federal government with a neutral law that regulates conduct only the federal government performs. That

legal error, which will be subject to de novo review, independently establishes the County's strong likelihood of success on appeal.

The record confirms that the County's application of the statute when it revoked the permit was likewise a neutral correction rather than a targeting of the federal government. The Building Official attested that he was unaware of § 1-102(b) when the permits issued and revoked them as "invalid when issued" upon learning of the state law limitation on the County's authority. Affidavit of Robert J. Frances, ECF No. 53-1, ¶¶ 5, 8 ("Frances Aff.").

### C. A neutral procedural requirement imposes a cost, not control, and does not offend the Supremacy Clause.

Even if § 1-102(b) touched the federal government's interests, a neutral permitting requirement imposes at most an incremental cost, the kind of burden the Supreme Court has repeatedly held permissible. "[S]tates can impose many laws on federal contractors that they could not apply to the federal government itself," including neutral taxes and regulatory requirements. *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022). The controlling line is one between "regulations that merely increase the federal government's costs" and those "that would control its operations." *Geo Group*, 50 F.4th at 756. A time-limited notice and comment process is at most a requirement that could merely increase the government's costs. It does not in any way seek to control the federal government's operations as it does not dictate who may operate the facility or how the federal government carries out immigration enforcement. The Ninth Circuit confirmed as much, holding that a neutral, generally applicable state law — there, a minimum-wage requirement — applied to a private contractor operating an ICE detention facility does not violate intergovernmental immunity, because the law's exemption applied equally to state and federal institutions and did not treat the federal government worse than any comparable non-federal actor. *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750 (9th Cir. 2025).

### D. The authorities enjoining outright bans are distinguishable and confirm the County's position.

The decisions invalidating state immigration-detention laws do not support the injunction. *GEO Group* struck an outright statewide ban on operating private detention facilities, resting on the direct regulation/control theory the Court declined to reach in this case. *Geo Group*, 50 F.4th at 750. *CoreCivic* likewise invalidated a flat ban on renewing private detention contracts on the direct regulation prong and "need not decide" the comparator question. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 321 (3d Cir. 2025). Both courts distinguished laws like the one here that leave the federal government free to proceed by other means, favorably citing *McHenry*. *CoreCivic*, 145 F.4th at 327. Section 1-102(b) bans nothing. It simply requires a process. That distinction is dispositive.

### E. The injunction is in tension with the anti-commandeering principle.

The relief the Court ordered does more than restrain a state law. It commands County officials to issue permits, which means inspect and provide approvals or feedback, which state law forbids absent the § 1-102(b) process. The anti-commandeering doctrine withholds from Congress the power to "compel the States to require or prohibit" acts, *Murphy*, 584 U.S. at 473, and bars the Federal Government from "conscripting the State's officers directly" to "administer or enforce a federal regulatory program," *Printz*, 521 U.S. at 935. A State's decision to require public process before permitting an immigration detention facility and decline to issue permits until that process is complete is a protected exercise of the State's authority not to participate in a federal function, not actionable discrimination. *McHenry County*, 44 F.4th at 585, 587. The County advanced precisely this point to the Court. Defs.' Reply 2, 5 (ECF No. 65). For the federal government to step in and require local officials, who possess only that permitting authority granted to them by the state, to issue permits on terms different than those enacted under state law is to commandeer

those local officials and require them to serve the federal government and to ignore their state law limitations.

**F. The GSA lease does not mandate the override of State control of its municipalities and of building permitting, rather it confirms Genesis's voluntary obligation to obtain local permits.**

The Court reasoned that the compliance clause in the GSA lease was not "clear and unambiguous" congressional authorization for state law to be applied. The County does not need such authorization, because § 1-102(b) is not discriminatory and has not been applied in such a fashion in the first place. The lease does, nonetheless, give support to the County's position on the neutrality question. Paragraph 14, the standard GSAR 552.270-8 "Compliance with Applicable Law" deviation clause, obligated Genesis to "comply with all Federal, state, tribal, and local laws applicable to ... the construction, ownership, alteration or operation of all buildings" and to "obtain all necessary permits ... at its own expense." Mem. Op. at 18. Genesis thus voluntarily undertook to satisfy local permitting on the same terms as any other applicant. Applying a neutral, generally applicable permitting requirement to a party that contracted to comply imposes no burden "on some basis related to [federal] governmental status." *Washington*, 596 U.S. at 838–39. The fact that the clause is boilerplate drawn from the GSA's own regulations confirms the point. It reflects the federal government's routine requirement that its lessors comply with local law.

**G. The injunction compels the County to exceed its state-delegated authority and to bind the non-party State.**

The County's authority to issue building permits is delegated by the State, see Md. Code Ann., Local Gov't Art. § 10-317, and § 1-102(b) withdraws that authority for an immigration detention facility until the notice-and-comment process is complete. Md. Code Ann., Local Gov't § 10-317; Defs.' MTD Mem. 14 (ECF No. 18-1). Issuance of a permit is not perfunctory or ministerial where the application does not comply with the governing law. *Siena Corp. v. Mayor*

*& City Council of Rockville Maryland*, 873 F.3d 456, 463 (4th Cir. 2017). By ordering the County to reinstate permits that state law forbids, the injunction directs an *ultra vires* act. Defs.' MTD Mem. 18 (ECF No. 18-1).

The relief also risks running up against Federal Rule of Civil Procedure 65(d)(2), by granting relief that takes control from the State of its subordinate county even while the State is not a party. The State of Maryland, whose law defines the limits of the County's permitting authority, despite its participation, is not a party, and a federal court may not through injunction compel the County to do what the State has not authorized. Defs.' PI Opp'n 10 (ECF No. 19).

**II. The County and the Public Will Be Irreparably Harmed Absent a Stay.**

The injunction bars the County from enforcing a duly enacted state statute and compels its officials to act contrary to state law while the Fourth Circuit decides whether the statute may be applied at all. A sovereign suffers irreparable injury whenever it is enjoined from effectuating statutes enacted by the people's representatives and that harm is compounded here because the injunction is mandatory and alters the status quo before any final adjudication. Absent a stay, the County will be forced to allow the facility to be completed and delivered, potentially before the appeal can be decided, mooting the very process § 1-102(b) requires and rendering the appeal a hollow exercise even if the County prevails.

**III. A Stay Will Not Substantially Injure Genesis.**

Genesis's asserted harm is entirely financial, such as accruing interest, delayed rent, and construction costs. Mem. Op. at 53. Such harm is not irreparable. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended" do not suffice, and a movant "must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages." *Di Biase*, 872 F.3d at 230. A preliminary injunction

requires a "clear showing" of harm that is "actual and imminent," not "remote [or] speculative." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 815–16 (4th Cir. 1991) (abrogated on other grounds by *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Genesis's contention that bankruptcy is "a possibility" is precisely the kind of speculative future injury that will not support extraordinary relief. Mem. Op. at 12. And because Genesis's asserted harm is "inseparably linked" to the merits, the County's strong showing on the merits correspondingly undermines the irreparable-harm factor. *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).

**IV. The Public Interest Favors a Stay.**

The public has a strong interest in the enforcement of validly enacted state laws and in the orderly resolution, before irreversible facts are created, of the significant federalism question this case presents. That interest is heightened where, as here, an injunction disrupts a local government's administration of its own land use and permitting scheme. "Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts," which do not sit as "a super-planning commission or a zoning board of appeals." *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 67–68 (4th Cir. 1992). Preserving the status quo ante pending appellate review serves that interest; permitting the facility to be completed and delivered while the appeal is pending would not.

## CONCLUSION

For the foregoing reasons, the County respectfully requests that the Court stay the Preliminary Injunction (ECF No. 71) pending the County's appeal to the United States Court of

Appeals for the Fourth Circuit and grant such further relief as is just and proper. In the alternative, the County requests a temporary administrative stay sufficient to permit it to seek a stay from the Court of Appeals under Federal Rule of Appellate Procedure 8(a).

Respectfully submitted,
HOWARD COUNTY OFFICE OF LAW

Gary W. Kuc
County Solicitor

/s/
David R. Moore Bar No. 26602
dmoore@howardcountymd.gov
Senior Assistant County Solicitor

/s/
Erin B. Purdy Bar No. 17275
Senior Assistant County Solicitor
epurdy@howardcountymd.gov
Carroll Building
3450 Court House Drive
Ellicott City, Maryland 21043
410.313.2104
410.313.3292 (facsimile)

## CERTIFICATE OF SERVICE

I certify that on August 24th , 2026, I electronically filed the foregoing Memorandum with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/

David R. Moore Bar No. 26602
Senior Assistant County Solicitor